ORAL ARGUMENT NOT YET SCHEDULED

22-5300

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

JASON LEOPOLD and BUZZFEED, INC.,

*Plaintiff/Appellants*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant/Appellee.*

_____

On Appeal from the United States District Court
For the District of Columbia
(No. 1-19-cv-03192, Honorable Rudolph Contreras)

_____

**OPENING BRIEF OF PLAINTIFF/APPELLANTS**

_____

Stephen Stich Match
Matthew Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone:  (312) 243-5900
Facsimile:  (312) 243-5902
Email:  match@loevy.com

*Attorneys for Plaintiff-Appellants*

## CORPORATE DISCLOSURE STATEMENT

BuzzFeed, Inc., is a public company, which is traded on Nasdaq under the ticker symbol "BZFD."  Ten percent (10%) or more of its stock is owned by NBCUniversal Media LLC, a wholly owned indirect subsidiary of Comcast Corporation, which is publicly traded (NASDAQ:CMCSA).  No other publicly held company owns 10% or more of its stock.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.    Parties and *Amici*

Plaintiff-Appellants are Jason Leopold and Buzzfeed, Inc.

Defendant-Appellee is the United States Department of Justice.

There were no *amici* or intervenors in the District Court and there are none in this Court.

### II.    Rulings Under Review

Appellants seek review of the September 19, 2022 order of the United States District Court for the District of Columbia, *Leopold v. United States Department of Justice*, No. 19-cv-3192, 2022 WL 4299993 (D.D.C. Sept. 19, 2022) (Contreras, J.) granting Appellee's renewed motion for summary judgment and denying Appellants' cross-motion for summary judgment.

### III.    Related Cases

None.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................i

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ................................................................................................i

TABLE OF AUTHORITIES .....................................................................iv

GLOSSARY .............................................................................................. vii

I.    JURISDICTIONAL STATEMENT ...............................................1

II.   ISSUES PRESENTED .....................................................................1

III.  RELEVANT STATUTES .................................................................2

IV.   STATEMENT OF THE CASE .........................................................2

      A. Introduction........................................................................2

      B. Judge Gleeson's decision that releasing parts of the Monitor Report would not cause harm under the First Amendment ...................5

      C. The District Court's decision that releasing any part of the Monitor Report would cause foreseeable harm under FOIA ................10

V.    SUMMARY OF ARGUMENT .......................................................15

VI.   ARGUMENT ..................................................................................18

      A. Standard of review..............................................................18

      B. Appellants were entitled to summary judgment on Exemption 8 foreseeable harm ................................................................20

          1. DOJ bore the burden to prove foreseeable harm...............................20

          2. The District Court wrongly held that DOJ met its burden to prove that disclosing any part of the Monitor Report would undermine public confidence in HSBC and cause an unwarranted run on banks................................22

**3. DOJ did not meet its burden on the other three interests: cooperation with federal authorities, maintaining relations with foreign regulators, and thwarting crime** ......................................25

**C. DOJ was not entitled to summary judgment** ............................................32

**1. Judge Gleeson's factual findings that disclosure would not cause harm contradict DOJ's evidence that it would** ........................32

**2. The Monitor's opinion that disclosure would not cause harm contradicts DOJ's opinion that it would** ..............................41

**3. DOJ's public summary of the Monitor Report undermines its conclusion that releasing any part of it would cause foreseeable harm** ......................43

**D. The District Court abused its discretion by denying *in camera* review** ......................45

**E. The Court should remand for further proceedings, including *in camera* review** ......................47

**VII.    CONCLUSION** ......................................48

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)** ...............49

**CERTIFICATE OF SERVICE** ......................................49

# TABLE OF AUTHORITIES

*Page*

*Cases*

*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) ...................................................45, 46

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ......................................................38

*Carter v. Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987)...............................46

*\*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................3, 15, 18, 19, 32

*Cf. Cause of Action Inst. v. DOJ*, 999 F.3d 696 (D.C. Cir. 2021) ..........................21

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ......................................................37

*Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531
(D.C. Cir. 1978) ..................................................................................................21, 23

*Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017) ..................................................36

*DOJ v. Tax Analysts*, 492 U.S. 136 (1989)..............................................................42

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365
(D.C. Cir. 2000) ........................................................................................................31

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596
(1982) ........................................................................................................................35

*Hall & Assocs. v. EPA*, 956 F.3d 621 (D.C. Cir. 2020)...............................18, 32, 34

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ......................7

*Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020).......................20

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977).........39

\*Authorities upon which we chiefly rely are marked with asterisks.

iv

*Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1 (1986) ................................................................................................. 35

*Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501 (1984) ................................................................................................ 34

*Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996) .................................... 19

*\*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) ............................................................................. *passim*

*Seife v. FDA*, 43 F.4th 231 (2d Cir. 2022) ........................................... 20

*Steele v. Mattis*, 899 F.3d 943 (D.C. Cir. 2018) .................................. 18

*U.S. v. Cojab*, 996 F.2d 1404 (2d Cir. 1993) ....................................... 38

*U.S. v. Haller*, 837 F.2d 84 (2d Cir. 1988) .......................................... 38

*U.S. v. HSBC Bank USA, N.A.*, 863 F.3d 125 (2d Cir. 2017) ............... 10

*\*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, 2016 WL 347670 (E.D.N.Y. Jan. 28, 2016) .................................................................. *passim*

*U.S. v. Gerena*, 869 F.2d 82 (2d Cir. 1989) ......................................... 36

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ................................. 47

*Washington Post Co. v. HHS*, 690 F.2d 252 (D.C. Cir. 1982) .............. 27

*Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) ............. 36

**Statutes**

5 U.S.C. § 552(8)(A)(ii) ......................................................................... 39

5 U.S.C. § 552(a)(3)(A) .......................................................................... 34

5 U.S.C. § 552(a)(4)(B) ................................................................. 18, 19, 45

5 U.S.C. § 552(a)(8)(A)(i)(I) .................................................................35, 38

5 U.S.C. § 552(a)(8)(A)(ii)(II) ...................................................................35

5 U.S.C. § 552(a)(8)(i) ...............................................................................20

5 U.S.C. § 552(a)(8)(i)(I) ..............................................................................2

5 U.S.C. § 552(b) ........................................................................................35

5 U.S.C. § 552(b)(1) ...................................................................................36

5 U.S.C. § 552(b)(8) ......................................................................................2

### Other Authorities

Appellee's Motion for Summary Affirmance, *Leopold v. DOJ*, No. 22-5300
(D.C. Cir. Jan. 3, 2023) ..............................................................................15

Order, *Leopold v. DOJ*, No. 22-5300 (D.C. Cir. Apr. 5, 2023) ..............................15

Fed. R. Civ. P. 56(a) ..................................................................................18

Fed. R. Civ. P. 56(c)(4) ..............................................................................30

*Leopold v. DOJ*, No. 19-cv-03192, (D.D.C. Sept. 11, 2020), ECF No. 17-1..........11

*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, (E.D.N.Y. Mar. 9, 2016),
ECF No. 70 ...................................................................................9, 10, 33

*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, ECF No. 3-4
(E.D.N.Y. Dec. 11, 2012) ............................................................................27

*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, (Apr. 1, 2015), ECF No. 33 ......6, 7

## GLOSSARY

| | |
|---|---|
| AML | Anti-money laundering |
| DOJ | Department of Justice |
| FOIA | Freedom of Information Act |
| HSBC | HSBC Holdings plc |

# I.    JURISDICTIONAL STATEMENT

This case was brought under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and presents a federal question conferring jurisdiction on the District Court.  Venue was proper under 5 U.S.C. § 522(a)(4)(B).

This Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291. This appeal is taken from a final judgment entered by a District Court within the District of Columbia on September 19, 2022.  Appellants filed a timely notice of appeal on November 17, 2022.

# II.    ISSUES PRESENTED

The District Court granted summary judgment to the Department of Justice under the Freedom of Information Act's foreseeable harm requirement in conjunction with FOIA Exemption 8 and denied Appellants' cross-motion, holding that DOJ properly withheld an entire eight-year-old, thousand page-long Monitor Report.  It issued this holding without conducting *in camera* review, and notwithstanding (a) a contrary factual finding from a different District Court judge, issued after *in camera* review, that disclosing parts of the report would not cause harm, (b) the contrary opinion of the Monitor who wrote the report, and (c) the fact that DOJ summarized parts of the Monitor Report nearly verbatim in public court filings.  The issues presented are:

1.      Whether the District Court erred by denying summary judgment to Appellants on Exemption 8 foreseeable harm.

2.      Whether the District Court erred by granting summary judgment to DOJ.

3.      Whether the District Court abused its discretion by refusing to conduct *in camera* review.

## III.      RELEVANT STATUTES

"An agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)."  5 U.S.C. § 552(a)(8)(i)(I).

"This section does not apply to matters that are contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8).

## IV.      STATEMENT OF THE CASE

### A.      Introduction.

FOIA's foreseeable harm requirement is "an independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).  That burden requires the agency to "demonstrate that … it is reasonably foreseeable that release of … materials would cause harm to an interest protected by" the exemption it cites.  *Id*. at 361.  And an agency is not entitled to

- 2 -

summary judgment on foreseeable harm if its factual submissions are "contradicted by contrary evidence in the record." *Id*.

These principles dictate the outcome of this appeal, which arises from an order on the parties' cross-motions for summary judgment. The Department of Justice withheld under FOIA Exemption 8 an entire eight-year-old, thousand-page report documenting HSBC's compliance with a deferred prosecution agreement. Appellants do not dispute that Exemption 8 covers the report or that disclosing some of it would cause foreseeable harm. But none of DOJ's declarations and exhibits submitted over two rounds of summary judgment proceedings establish that preventing foreseeable harm required withholding the whole thing. As the party bearing the burden, DOJ's failure of proof mandated summary judgment for Appellants on the issue under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

But even if DOJ's evidence standing alone could meet its burden, there is "contrary evidence in the record" requiring denial of DOJ's cross-motion. *Reps. Comm.*, 3 F.4th at 361. That evidence includes factual findings issued by Judge Gleeson of the Eastern District of New York, who oversaw the deferred prosecution and ordered some of the report to be made public under the First Amendment right of access to court records but was reversed on other grounds by the Second Circuit. Judge Gleeson found that disclosing parts of the report would not cause harm. He reached that conclusion after reviewing the whole report *in camera* and hearing the

same arguments and evidence DOJ advanced in the District Court. The contrary evidence also includes the opinion of the Monitor who wrote the report, who stated in an affidavit introduced by DOJ that disclosing parts of it would not cause harm. Indeed, DOJ itself summarized parts of the report almost verbatim in public court filings before Judge Gleeson, betraying its own belief that partial disclosure would not cause harm. Thus, DOJ was not entitled to summary judgment at least as to the passages Judge Gleeson identified and those the agency summarized on the public docket.

The District Court disagreed. It declined to conduct *in camera* review, which Appellant had requested so that the court's decision on harm from disclosure would be based on the same quality of evidence as Judge Gleeson's was. It then held, without analyzing any particular parts of the report, that DOJ met its Exemption 8 foreseeable harm burden, found no contrary evidence in the record, and granted summary judgment to DOJ.

This was error. A review of DOJ's evidence shows that the agency failed to establish that disclosing parts of the report, as opposed to the whole thing, would cause foreseeable harm under Exemption 8. The District Court was also wrong that no contrary evidence existed. It rejected as irrelevant Judge Gleeson's factual findings because he issued them under the First Amendment right of access rather than FOIA. But the differences between those two rubrics are minimal in the context

of this case.  And though the District Court was not bound to accept Judge Gleeson's factual findings, they were certainly not worthless on summary judgment.  The District Court also did not mention the Monitor's conclusions or DOJ's public filings.  Were there any doubt on these points, given the unique circumstances of this case—particularly the factual findings after *in camera* review of a co-equal Article III judge—the court should not have sided with DOJ without first reviewing the report *in camera*.

This Court should reverse and hold that Appellants are entitled to summary judgment on Exemption 8 foreseeable harm.  In the alternative, it should remand for *in camera* review to decide that question, accompanied with a *Vaughn* index so that Appellants can properly test DOJ's redactions.  In either case, the Court should remand for the District Court to decide whether DOJ met its burden on other FOIA exemptions the District Court did not address and to decide, after *in camera* review accompanied by a *Vaughn* index, which parts of the Monitor Report DOJ may lawfully withhold.

### B.    Judge Gleeson's decision that releasing parts of the Monitor Report would not cause harm under the First Amendment.

In 2012, DOJ charged HSBC and its subsidiaries in the Eastern District of New York with committing several federal crimes, including failing to maintain an effective anti-money laundering program and willfully facilitating financial transactions on behalf of sanctioned entities.  J.A.83-84.  Instead of pursuing the

charges, DOJ immediately entered into a deferred prosecution agreement with HSBC.  J.A.84.  Under the agreement, HSBC "admitted responsibility for the charges and agreed to enhance its corporate anti-money laundering policies." J.A.84.  The agreement also appointed a Monitor to assess HSBC's progress in implementing those measures and its compliance with anti-money laundering and sanctions laws.  *Id*.  Per the agreement, the Monitor would submit reports to DOJ. J.A.84-85.

Judge Gleeson approved the deferred prosecution agreement and ordered DOJ to file quarterly reports about its implementation.  *U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, 2016 WL 347670, at *1 (E.D.N.Y. Jan. 28, 2016) ("*HSBC I*"), *rev'd*, 863 F.3d 125 (2d Cir. 2017).  In January 2015, the Monitor issued his first report (the "Monitor Report").  *Id*. at *2.

DOJ summarized the Monitor Report in its next quarterly report, which it filed on the public docket.  *See generally* Letter from United States Attorney for the Eastern District of New York to Hon. John Gleeson, *United States v. HSBC Bank USA, N.A.*, No. 12-CR-763, (Apr. 1, 2015), ECF No. 33 (the "Quarterly Report"). According to the Quarterly Report, the Monitor concluded that HSBC "made progress" in several areas the Quarterly Report outlined.  *Id*. at 2.  It also identified two areas in which the Monitor felt HSBC's "progress has been too slow": HSBC's "corporate culture and its compliance technology."  *Id*.  It provided details on each.

As to corporate culture, for instance, DOJ summarized the Monitor's finding that certain senior HSBC managers had "inappropriately pushed back against adverse findings by the HSBC Global Internal Audit team and HSBC Bank USA's Compliance Testing and Control ('CTAC') team," and how HSBC had responded: by reassigning HSBC's Regional Head of the Americas and reducing his 2014 bonus by 50% and overall compensation by 14%, and by issuing a directive to senior HSBC employees that the Quarterly Report directly quoted.  *Id*. at 3-4.

After DOJ filed the Quarterly Report, Judge Gleeson ordered it to file the full Monitor Report.  *See HSBC I*, 2016 WL 347670, at *2.  DOJ did so under seal.  *See id*.  A third party then moved to unseal the Monitor Report under the First Amendment right of access.  *See id*.

DOJ and HSBC opposed the unsealing motion on two grounds.

First, they argued that the Monitor Report was not a "judicial document" to which the First Amendment access right attaches.[1]  Judge Gleeson rejected that argument.  *HSBC I*, 2016 WL 347670, at *2-4.

Second, they argued that unsealing the Monitor Report would have four harmful effects sufficient to overcome the public's qualified First Amendment

---

[1] Only judicial documents are subject to the First Amendment right of access.  A judicial document is one that is "relevant to the performance of the judicial function and useful in the judicial process."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

access right: (1) negatively impacting the Monitor's work by chilling HSBC employees' cooperation with him; (2) giving criminals a "road map" to evade HSBC's compliance programs; (3) impacting DOJ's future law enforcement efforts; and (4) undermining the government's relationship with foreign regulators. *See id.* at *5-6. To support these arguments, DOJ filed letters written by its Criminal Division and the EDNY US Attorney's office, and several foreign regulators, as well as an affidavit by the Monitor. *See generally* J.A.28-60; *see also* J.A.25 (describing these records as "the government's submission"). Though the Monitor objected to unsealing the full report, he also "believe[d] that a redacted report that does not negatively impact the Monitor's work can be produced." J.A.44. HSBC also submitted a letter opposing unsealing. *See HSBC I*, 2016 WL 347670, at *5.

Judge Gleeson accepted that DOJ's first, second, and fourth interests are "higher values" that can overcome the public's First Amendment access right. *See id.* at *5-6. However, after reviewing the Monitor Report, he agreed with the Monitor that it would be possible to unseal a redacted version without undermining them. He held that redacting employees' names would alleviate the chill on their cooperation. *Id.* at *5. He held that "much of the information" about HSBC's sanctions compliance programs "is generalized or would likely be otherwise unhelpful to a would-be money launderer," and that much of it relates to forms of compliance HSBC no longer uses; however, he held that other information regarding

- 8 -

HSBC's compliance could remain redacted. *Id*. at *6. And because he "credit[ed]" DOJ's claim that full unsealing could harm the government's relationship with foreign regulators, he ordered the redaction of all the appendices dealing with foreign countries, as well as "country names and explicit references to confidential material, as identified by these foreign jurisdictions." *Id*. But he held that sealing parts of the Monitor Report that did not concern foreign jurisdictions was unnecessary to protect the government's relationship with them.[2] *Id*. So he ordered the parties to propose redactions to the Monitor Report. *Id*. at *7.

The parties then filed proposed redactions under seal. Judge Gleeson "made all of the redactions requested by the government." *U.S. v. HSBC Bank USA, N.A*., No. 12-CR-763, (E.D.N.Y. Mar. 9, 2016), ECF No. 70, at 2 ("*HSBC II*"). But he rejected some redactions proposed by HSBC, finding the passages not to be commercially sensitive enough to warrant redaction. He quoted as an example a passage from the Monitor Report explaining at a high level the Monitor's conclusion—which DOJ had summarized almost verbatim in its Quarterly Report— that HSBC has "moved too slowly and made too little progress toward instilling the type of culture it will need in order to build an effective [anti-money laundering] and

---

[2] Judge Gleeson held that the third interest was too "minimal" to overcome the public's access right because DOJ had chosen to enter into the deferred prosecution agreement. *HSBC I*, 2016 WL 347670, at *6.

sanctions compliance program." *Id*. at 3.  He stayed his ruling and kept the Monitor Report under seal pending appellate review.  *Id*.

DOJ and HSBC appealed, and the Second Circuit reversed.  The court held that the Monitor Report was "not a judicial document" and thus not subject to the First Amendment right of access.  *U.S. v. HSBC Bank USA, N.A*., 863 F.3d 125, 142 (2d Cir. 2017).  It "[did] not reach whether a First Amendment or common law right of access would have ultimately required the unsealing of the document (in any form) under the circumstances of this case." *Id*. at 142 n.7.  Thus, it did not address Judge Gleeson's factual findings that disclosing parts of the report would cause no harm.  It also noted that members of the public could request the Monitor Report under the Freedom of Information Act, and "offer[ed] no view on whether any of FOIA's exemptions would apply." *Id*.

## C.    The District Court's decision that releasing any part of the Monitor Report would cause foreseeable harm under FOIA.

So Appellants—an investigative reporter and his news organization— requested the Monitor Report under FOIA.  J.A.88.  They sued after DOJ failed to respond to the request within FOIA's statutory deadlines.  J.A.9-11.  DOJ denied the request under FOIA Exemptions 4, 6, 7(A), 7(C), 7(D), and 8, and the parties cross-moved for summary judgment.  J.A.15.  Appellants challenged all the exemptions other than 6 and 7(C) and argued that DOJ did not meet its burden to withhold the whole report.  Attempting to meet its foreseeable harm burden under FOIA, DOJ

- 10 -

resurrected the same arguments, and essentially the same evidence, that Judge Gleeson held did not justify full sealing.  It filed declarations from its Criminal Division, the EDNY US Attorney's office, and HSBC's outside counsel, as well as the Monitor's affidavit filed with Judge Gleeson.  *See generally* J.A.24-27, J.A.42-44, J.A.61-69, J.A. 72-77.[3]  None addressed the harm that might result from disclosing **only** the passages Judge Gleeson had ordered unsealed.  DOJ also attempted to rely on the letters from foreign regulators that it filed with Judge Gleeson, but the District Court declined to consider them as inadmissible hearsay. J.A.95-96.  And Appellants asked the District Court to review the Monitor Report *in camera*.  *See* Plaintiff's Combined Memorandum in Opposition to the Government's Summary Judgment Motion and in Support of Plaintiff's Cross Motion for Summary Judgment at 10, *Leopold v. DOJ*, No. 19-cv-03192, (D.D.C. Sept. 11, 2020), ECF No. 17-1.

The District Court denied both parties' summary judgment motions.  It addressed only Exemptions 4 and 8 because they "have the broadest sweep." J.A.91. The court held that both exemptions apply to the Monitor Report.  As to foreseeable harm, the court held with respect to Exemption 4 that disclosing the full report would implicate "the kind of harm described in the government's submission"—providing

---

[3] It also filed a declaration by the Executive Office for United States Attorneys, which processed Appellants' request.  *See* J.A.14-23.

an unfair advantage to HSBC's competitors.  J.A.99.  With respect to Exemption 8, it held that disclosing the whole thing would undermine two interests that exemption protects: (1) public confidence in HSBC by identifying "significant, current deficiencies in HSBC's anti-money laundering and sanctions compliance program," and (2) the confidential relationship between banks and their regulators.  J.A.102 (cleaned up).

But the Court held that DOJ did not meet its burden to withhold the whole Monitor Report.  It reasoned that DOJ's "segregability statement is particularly brief" and was insufficient to overcome "Judge Gleeson's findings that suggest that many concerns with disclosure could be addressed through redactions."  J.A.104. So it ordered DOJ to redo its segregability analysis, including as to foreseeable harm. J.A.104-05.  And it ordered DOJ to "provide greater detail on the basis for withholding the specific portions of the Report that Judge Gleeson concluded were appropriate for release to the public."  J.A.104-05.

The parties filed renewed motions for summary judgment.  In support of its motion, DOJ filed a declaration purporting to provide the segregability analysis on foreseeable harm the District Court had ordered.  But the declaration did not, as ordered, address any of the specific portions of the Monitor Report Judge Gleeson ordered released.  Instead, it argued that because Judge Gleeson's analysis "was not conducted in the framework of FOIA[,] … redacting only the limited categories of

information proposed by the district court would not adequately address the interests identified in the government's filings in this case, most notably the interests underlying FOIA Exemptions 7(A) and 8."  J.A.108.

The District Court recognized that this declaration was "relatively brief and somewhat conclusory."  J.A.145.  But it granted DOJ summary judgment anyway, holding that DOJ established that Exemption 8 covered the whole report and that disclosing any passage of it would harm interests protected by that exemption.  The court did not address any of DOJ's other asserted exemptions. J.A.152.

In reaching this holding, the court rejected Appellants' argument that Judge Gleeson's findings could convince a rational factfinder that releasing parts of the Monitor Report would not cause foreseeable harm.  But the District Court did not dispute those findings directly.  Instead, it sought to distinguish them by stating that Judge Gleeson's decision to unseal was a matter of "discretion," that the First Amendment involves a narrow tailoring analysis, and that the harms relevant to Judge Gleeson's First Amendment analysis—the only ones DOJ asked him to consider — are "not as broad as the harms that Exemption 8 seeks to avoid." J.A.149.  The District Court gave one example of such a harm: "the loss of public confidence" in HSBC.  J.A.150.  It then concluded that disclosing the passage that Judge Gleeson quoted in his opinion "could plausibly do just that."  J.A.150.  It cited no record evidence for that conclusion and gave no explanation for extrapolating it

- 13 -

to every passage in the Monitor Report.  The court also held that Judge Gleeson did not apply the Exemption 8 harms on which DOJ relied "as liberally as Exemption 8 would require," but did not elaborate.  J.A.151.

In addition, the District Court did not address that DOJ itself had summarized this passage almost verbatim in its publicly filed Quarterly Report.  It did not explain how disclosing even a single passage of Monitor Report would cause the public to lose confidence in HSBC.  In particular, it did not say what harm might befall HSBC if DOJ disclosed why the Monitor concluded that HSBC had improved its practices. It did not identify any specific flaws in Judge Gleeson's and the Monitor's conclusion that redaction would adequately protect banks' relationships with their regulators.  It did not acknowledge that some of Judge Gleeson's findings simply describe the contents of the Monitor Report, such as his finding that it discussed compliance problems that HSBC had solved.  It did not reckon with the Monitor's conclusion that disclosing parts of the report he wrote would cause no harm.  And, crucially, it did not purport to hold DOJ to its burden to show that foreseeable harm would result from disclosing the specific passages of the Monitor Report that Judge Gleeson found would not cause harm, despite (correctly) ordering DOJ to make that showing in resolving the parties' first round of summary judgment motions.

Finally, the District Court denied Appellants' request for *in camera* review. It held that *in camera* review was unnecessary because DOJ had carried its burden

- 14 -

via its declarations and exhibits, which were "not contradicted anywhere in the record." J.A.152.

Appellants timely appealed. J.A.153. DOJ then moved for summary affirmance. *See* Appellee's Motion for Summary Affirmance, *Leopold v. DOJ*, No. 22-5300 (D.C. Cir. Jan. 3, 2023). The Court denied that motion and set the case for presentation to a merits panel. *See* Order, *Leopold v. DOJ*, No. 22-5300 (D.C. Cir. Apr. 5, 2023) (*per curiam*).

## V.    SUMMARY OF ARGUMENT

1.  FOIA places the burden on the agency to show that disclosure would foreseeably harm an interest protected by an exemption. The requester is entitled to summary judgment if the agency's submissions do not create a genuine issue as to foreseeable harm. This follows from standard summary judgment principles the Supreme Court articulated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2.  The District Court erred by holding that DOJ's submissions created a genuine issue as to whether disclosing parts of the Monitor Report would foreseeably harm an interest protected by Exemption 8. It held primarily that withholding the whole thing was necessary to protect public confidence in HSBC and thus prevent an unwarranted run on banks. But the summary judgment record is devoid of any evidence that disclosing the whole report would have that result. And DOJ itself did not rely on that interest. As to the three interests DOJ did rely on—promoting

- 15 -

cooperation with federal authorities, maintaining relations with foreign regulators, and thwarting crime—the agency failed to show how targeted redaction would not satisfy them. In particular, it failed to address what (if any) harm would result from disclosing only the parts of the Monitor Report that Judge Gleeson held would be harmless. Because the agency did not justify withholding the whole report, it did not meet its foreseeable harm burden. Appellants were entitled to summary judgment.

3. Assuming *arguendo* that DOJ's evidence created a genuine issue of fact, the District Court still should have denied DOJ's summary judgment motion. That is because DOJ was not entitled to judgment as a matter of law viewing the evidence in the light most favorable to Appellants. That evidence included Judge Gleeson's factual findings that disclosing parts of the Monitor Report would not cause harm. The District Court discounted those findings as immaterial because they were issued under the First Amendment access right rather than FOIA. But it identified no material differences between the doctrines in the context of this case. Specifically, while the interests that can overcome the qualified First Amendment access right need not coincide with those protected by a FOIA exemption, Judge Gleeson held that the three interests DOJ invokes under Exemption 8 ***can*** overcome the qualified First Amendment right. Further, there is no meaningful difference between First Amendment narrow tailoring and FOIA's foreseeable harm requirement. For both

- 16 -

require the same thing: presumptive disclosure of every part of a record unless that would cause recognized harm. And in addition to improperly discounting Judge Gleeson's factual findings, the District Court failed to contend with both the Monitor's conclusion that disclosing parts of his report would cause no harm, and DOJ's publicly filed Quarterly Report betraying its own belief in the same conclusion. So if Appellants were not entitled to summary judgment, neither was DOJ.

4. At the very least, the District Court erred by granting DOJ summary judgment without the benefit of *in camera* review. Judge Gleeson had conducted that review himself, and the District Court's failure to do that put it in a strictly worse position to answer essentially the same question: whether disclosing parts of the Monitor Report would cause no harm. In the unique circumstances of this case, that was an abuse of discretion.

5. This Court should reverse. It should order the entry of summary judgment for Appellants on Exemption 8 foreseeable harm and remand for further proceedings, including *in camera* review, to determine the scope of the material DOJ may withhold under that exemption, as well as further proceedings on the FOIA exemptions the District Court did not address.

# VI.    ARGUMENT

## A.    Standard of review.

This case arises on cross-motions for summary judgment.  A district court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Put differently, summary judgment is required if, "viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences accordingly, no reasonable jury could find in the non-moving party's favor." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) (cleaned up) (citing *Steele v. Mattis*, 899 F.3d 943, 947 (D.C. Cir. 2018)).  Conversely, it is inappropriate "if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome." *Id*.  These rules apply with full force in FOIA cases.  *Id*.

The movant's summary judgment burden depends in part on who bears the ultimate burden of proof.  Under FOIA, "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  That includes showing that disclosure would foreseeably harm an interest protected by the exemption the agency invokes.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).  Thus, Appellants' motion is governed by *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). *Celotex* holds that the movant who does not bear the burden of proof (under FOIA,

- 18 -

the requester) "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (cleaned up). Once the movant meets that burden, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. Applied to this case, Appellants are entitled to summary judgment on Exemption 8 foreseeable harm if DOJ failed to show it.

The District Court was required to review *de novo* the agency's foreseeable harm determination. *See* 5 U.S.C. § 552(a)(4)(B) (requiring the court to "determine the matter de novo"). This Court reviews *de novo* the District Court's decision on summary judgment. *See Reps. Comm*., 3 F.4th at 361 ("We review de novo a district court's decision on summary judgment in a FOIA case."). The Court reviews for abuse of discretion the District Court's denial of *in camera* review. *See Quinon v. FBI*, 86 F.3d 1222, 1225, 1227 (D.C. Cir. 1996) (holding that "[t]he decision to conduct an *in camera* review is committed to the broad discretion of the trial judge,"

and reversing because district court abused its discretion by denying *in camera* review) (cleaned up).

### B.    Appellants were entitled to summary judgment on Exemption 8 foreseeable harm.

#### 1.    DOJ bore the burden to prove foreseeable harm.

As the withholding agency, DOJ bore the burden to establish foreseeable harm.  That required DOJ to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue," harm the interest protected by the exemption.  *Reps. Comm.*, 3 F.4th at 370.  *See also Seife v. FDA*, 43 F.4th 231, 242 (2d Cir. 2022) (holding agency is required to support foreseeable harm defense with "reasonably specific detail").  To make that demonstration, DOJ had to "concretely explain how disclosure 'would'—not 'could'"—cause harm.  *Reps. Comm.*, 3 F.4th at 369-70 (quoting *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).

Further, DOJ bore that burden with respect to every piece of "specific information," or passage of a record, that it withheld from the Monitor Report— including, but not limited to, the passages Judge Gleeson found harmless.  *Reps. Comm.*, 3 F.4th at 371 (citation omitted).  This is because FOIA allowed it to "withhold information under this section only if" disclosure would cause foreseeable harm.  5 U.S.C. § 552(a)(8)(i).  Put differently, if disclosing part of a record—or "information"—would not cause harm, the foreseeable harm requirement forbids

DOJ from withholding it.  *Cf. Cause of Action Inst. v. DOJ*, 999 F.3d 696, 706 (D.C. Cir. 2021) (Rao, J., concurring) (observing that foreseeable harm provision refers to "information" rather than "records").  So if disclosing even a single passage of the Monitor Report would not cause harm, DOJ had to do so.

Establishing that disclosure would cause foreseeable harm also requires identifying what interests the exemption protects.  The District Court held that Exemption 8 protects the two interests this Court articulated in *Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531 (D.C. Cir. 1978): (1) maintaining "public confidence" to prevent "unwarranted runs on banks," and (2) "safeguard[ing] the relationship between the banks and their supervising agencies," specifically by reducing the incentive for the banks to "cooperate less than fully with federal authorities."  *Id*. at 534.  *See also* J.A.102.  And it briefly referred to two others: (3) maintaining DOJ's relations with foreign regulators, and (4) enabling HSBC and other financial institutions to thwart crime.  J.A.132, J.A.150-51.  The court granted DOJ summary judgment on at least the first interest; its view on the other three is unclear because it mentioned them only in passing in its opinion granting summary judgment.  Regardless, FOIA required DOJ to show that they apply to every passage in the Monitor Report.

- 21 -

**2.    The District Court wrongly held that DOJ met its burden to prove that disclosing any part of the Monitor Report would undermine public confidence in HSBC and cause an unwarranted run on banks.**

The District Court cited no evidence that disclosing the passages Judge Gleeson identified as harmless—let alone just a single passage of the Monitor Report—would undermine public confidence in HSBC and cause an unwarranted run on banks.  In its first opinion, it cited only a paragraph from the Monitor's affidavit stating that the Monitor Report "identifies significant, current deficiencies in HSBC Group's AML [anti-money laundering] and sanctions compliance program." J.A.86 (quoting J.A.44 (Monitor's affidavit)).  But the Monitor never said those concerns applied to every passage in his report.  Nor could he have, for he stated unambiguously that "a redacted report that does not negatively impact the Monitor's work can be produced." J.A.44.  So the Monitor's affidavit provided no support for the proposition that maintaining public confidence in HSBC and preventing an unwarranted run on banks required withholding the whole Monitor Report.[4]

In its second opinion, the District Court cited a single passage from the Monitor Report that Judge Gleeson had quoted in his decision.  This passage stated that HSBC had "moved too slowly and made too little progress toward instilling the

_____

[4] The District Court might well agree: it denied DOJ's first motion for summary judgment in the same decision.

type of culture it will need in order to build an effective AML and sanctions compliance program."  J.A.150 (quoting *HSBC II* at 3, in turn quoting Monitor Report).  The court then held that disclosing this paragraph "could plausibly" undermine public confidence in HSBC.  J.A.150.

But the District Court's conclusion is self-defeating.  As the court recognized, this passage has been public since Judge Gleeson docketed it in 2016.  *See* J.A.150 n.6.  Yet neither the court nor DOJ cited any evidence that disclosing it undermined public confidence in HSBC at all, let alone to a degree that would "cause unwarranted runs on" HSBC.  *Heimann*, 589 F.2d at 534.

Further, the District Court erred by extrapolating its conclusion about this one passage to every other passage in the thousand-page Monitor Report, which it did not review.  Perhaps disclosing some passages would undermine public confidence in HSBC and cause an unwarranted run on the bank.  But what about the passages discussing compliance deficiencies HSBC had rectified?  *See* Appellee's Mot. Summ. Affirmance at 12 (conceding HSBC had rectified some compliance deficiencies).  What about the passages not discussing compliance deficiencies at all?  *See* Quarterly Report at 1 (discussing HSBC's good-faith efforts to comply with the deferred prosecution agreement).  What about the passages explaining why the Monitor concluded that HSBC had "made progress" in a large number of areas?

Quarterly Report at 2.[5]  What about the Monitor Report's background and table of contents?  The District Court does not answer these questions, and neither does DOJ.

Indeed, so sparse was DOJ's evidence on public confidence that the agency did not rely on that ground for foreseeable harm in the district court, devoted less than one sentence to the issue in its motion for summary affirmance, and did not address the point in its reply to that motion after Appellants pointed out the deficiencies in its proof.  *See, e.g.*, Appellee's Mot. Summ. Affirmance at 15; *see generally* Appellee's Reply in Support of Mot. Summ. Affirmance; *see also* Appellants' Opposition to Mot. Summ. Affirmance at 21-22.

Just one of DOJ declarations speaks to public confidence.  It says only: "[A]n unfiltered recitation of the FI's [financial institution's] affairs, albeit historic, could undermine its current security by undermining public confidence in the FI or the financial system."  J.A.65.  This passage cannot carry the agency's foreseeable harm burden for four reasons.  First, it does not refer to the Monitor Report and so does not articulate a "link between the specified harm and the specific information contained in the material withheld."  *Reps. Comm.*, 3 F.4th at 372.  Second, for the

---

[5] DOJ described these areas as "risk assessment, 'Know Your Customer' information and customer due diligence processes, compliance monitoring and testing, transaction monitoring alert adjudication and suspicious activity reporting, distribution of information to management, responses to potential financial crime violations, and incentivizing AML and sanctions compliance through compensation adjustment."  Quarterly Report at 2.

same reason, it does not even purport to justify withholding each passage in the Monitor Report. Third, it merely "mouth[s] the generic rationale" for the exemption. *Id*. at 370. And fourth, it states only that disclosure "could," not "would," cause harm. *Id*. 369-70.

The District Court erred by holding that disclosing parts of the Monitor Report would undermine public confidence in HSBC.

### 3. DOJ did not meet its burden on the other three interests: cooperation with federal authorities, maintaining relations with foreign regulators, and thwarting crime.

It is unclear whether the District Court held DOJ to have met its burden on the other three interests. In its first opinion, it held DOJ did not meet its burden to withhold the full Monitor Report. And it referred to these three interests only in passing in its opinion granting DOJ summary judgment. *See* J.A.132, J.A.150-51. In any case, this Court reviews *de novo*, and DOJ did not meet its burden.

***Cooperation with federal authorities.*** The District Court apparently believed that disclosing at least parts of the Monitor Report would deter banks from cooperating with federal authorities and thus undermine "regulatory effectiveness." J.A.103. But DOJ did not meet its burden to withhold the whole thing. DOJ introduced two types of evidence. Neither suffices.

First, DOJ introduced evidence that bank employees would better cooperate with the Monitor on a confidential basis, and thus that disclosing the report would

make them less candid.  For instance, the Monitor evoked this concern, emphasizing that his work "depends on full, open, and candid cooperation from employees at all levels of the Bank," and concluding that "releasing this report publicly would have a chilling effect on those employees, and the level of cooperation and candor that I would receive could decrease substantially."  J.A.44.

But the agency never explained why redaction would not allay it.  Judge Gleeson held, for instance, that redacting all HSBC employees' names would suffice, particularly since the sheer number that participated would render any one employee unidentifiable.  *See HSBC I*, 2016 WL 347670, at *5.  DOJ never addressed that option—not even after the District Court ordered it to specifically address Judge Gleeson's redactions.  J.A.104-05.  All it said was that, due to unexplained differences between FOIA and the First Amendment, "redacting only the limited categories of information proposed by the district court would not adequately address the interests identified in the government's filings in this case." J.A.108.  It gave no more detail, and the District Court rightly described the declaration as "conclusory."  J.A.145.  This bare statement falls short of the required "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue," reduce candor.  *Reps. Comm.*, 3 F.4th at 370.

Second, DOJ introduced evidence that HSBC provided information to the Monitor under an assurance of confidentiality, insinuating that disclosure would cause later banks to provide less information.  For instance it introduced a declaration by HSBC's outside counsel, Benjamin Naftalis, who stated that its deferred prosecution agreement with DOJ assured it confidentiality, and it submitted all the information to the Monitor only given that assurance.  J.A.111.

This argument is flawed.  DOJ never assured HSBC confidentiality.  To the contrary, the deferred prosecution agreement states that the DOJ may release the Monitor Report if it "determines in its sole discretion that disclosure would be in furtherance of the Department's discharge of its duties and responsibilities." Deferred Prosecution Agreement Attachment B: Corporate Compliance Monitor at 11, *U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, ECF No. 3-4 (E.D.N.Y. Dec. 11, 2012) ("Monitor Agreement").  It also says the Monitor Report is public if "required by law." *Id*.  So it begs the question to argue from this provision that disclosure is not required by law (*i.e.*, FOIA).  Plus, this argument flies in the face of this Court's holding that an agency cannot avoid disclosure merely by promising confidentiality. *See Washington Post Co. v. HHS*, 690 F.2d 252, 263 (D.C. Cir. 1982) ("[T]o allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate.").

Regardless, the "assurance of confidentiality" argument again fails to justify withholding the full Monitor Report. Whatever confidentiality assurance HSBC received was part of a deferred prosecution agreement requiring the bank to "cooperate fully with the Monitor," including by giving the Monitor access to "all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement." Monitor Agreement at 2. The alternative to that agreement was a bombshell prosecution—of a major bank on the heels of the 2008 financial crisis, no less—that would have aired HSBC's compliance problems anyway, including, presumably, much of the information it gave the Monitor. No rational factfinder could infer that HSBC would have chosen that public prosecution over the disclosure of even part of the Monitor Report. Plus, even if HSBC gave the Monitor information that would not have come to light in open court—something DOJ has never said—that would at most justify withholding that specific information, not the whole Monitor Report.

***Maintaining relations with foreign regulators.*** DOJ also argued that releasing the Monitor Report would harm its relations with foreign regulators. It says that these regulators cooperated with the Monitor under assurances of confidentiality and that disclosure would make them less cooperative in the future. It relied primarily on the Monitor's affidavit, which described his interactions with

those regulators and their expectations of confidentiality—the same Monitor who, again, said that "a redacted report that does not negatively impact the Monitor's work can be produced." J.A.44.[6]

Again, though, DOJ did not show that this interest justifies withholding the full Monitor Report. In particular, it did not, as the District Court had ordered, address Judge Gleeson's suggested approach of redacting all the appendices dealing with foreign jurisdictions, plus all "country names and explicit references to confidential material, as identified by these foreign jurisdictions." *Id*. *HSBC I*, 2016 WL 347670 at *6. The agency has not even tried to show that the foreign jurisdictions would care about disclosing information they have nothing to do with. It beggars belief that they would.

***Thwarting crime.*** Finally, DOJ argued that disclosing the Monitor Report would facilitate crime in two ways. Neither passes muster.

First, it argues that disclosure would expose HSBC's own anti-money-laundering and sanctions compliance vulnerabilities. But that could justify withholding only HSBC's current compliance problems. And DOJ introduced no evidence suggesting that every passage in the Monitor Report discusses HSBC's current compliance problems. Indeed, DOJ conceded in its motion for summary

---

[6] DOJ also sought to rely on unsworn letters by foreign regulators. The District Court properly declined to consider them as inadmissible hearsay not subject to any exception. *See* J.A.93 n.5, J.A.95-96.

affirmance that DOJ had "rectified" some of them.  Appellee's Mot. Summ. Affirmance at 12.  So DOJ could fully satisfy this interest through redaction.

Second, DOJ argues that disclosure would allow criminals to attack other financial institutions.  This, too, does not justify withholding the whole Monitor Report.  In its summary affirmance papers, DOJ pointed to two passages in the record it says suffice.  One is a paragraph from a declaration by HSBC's outside counsel, Mr. Naftalis, stating in full: "the Report's contents could provide a roadmap for criminals to exploit vulnerabilities in HSBC's compliance program and potentially those of other financial institutions."  J.A.114.  But this statement does not purport to apply to every passage in the report, as would be required to justify withholding them all.  Saying that disclosure "could … potentially" harm other financial institutions' compliance programs is too speculative to meet DOJ's foreseeable harm burden.  *See Reps. Comm.*, 3 F.4th at 369-70 (holding that agency must "concretely explain how disclosure 'would'—not 'could'"—cause harm).  *Reps. Comm.*, 3 F.4th at 369-70.  And Mr. Naftalis's speculation is entitled to no weight on summary judgment, as he claims no personal knowledge of other financial institutions' compliance programs.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

- 30 -

DOJ also cited an unsworn letter from a UK regulator.  The relevant passage states in full: "We consider that criminals may identify specific failings and/or vulnerabilities displayed in HSBC Group's control framework that may be replicated in other firms.  This might increase the risk of targeted attempts to use firms for purposes connected with financial crime now and in the future, contrary to our integrity objective."  J.A.54.  But this passage also cannot carry DOJ's burden to withhold the whole Monitor Report.  It only applies to passages that discuss HSBC's control framework, and there is no evidence that every passage in the report discusses them.  Indeed, it is clear that some passage merely discuss the bank's corporate culture.  *See* J.A.150 (quoting *HSBC II* at 3, in turn quoting Monitor Report).  In addition, that criminals "may" identify problems, which "might" increase the risk of crime, is, again, too speculative to show that disclosure "would" cause foreseeable harm.  *Reps. Comm.*, 3 F.4th at 369-70.

Finally, the District Court declined to consider this unsworn letter (and several other letters) because it was hearsay not falling within any exception.  That decision was proper because DOJ did not show that it could be "converted into admissible evidence," namely, sworn testimony by the UK regulator.  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).

***

DOJ introduced no evidence from which a rational factfinder could infer that any interest arguably protected by Exemption 8 justified withholding the whole Monitor Report. Because it bore the burden of proof, its failure warranted summary judgment on the issue in favor of Appellants. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The District Court erred by denying Appellants' motion.

## C.    DOJ was not entitled to summary judgment.

Assuming *arguendo* that a rational factfinder could infer from DOJ's evidence that the interests underlying Exemption 8 justified withholding the full Monitor Report, the District Court still erred in granting DOJ summary judgment. That is because there is "contrary evidence in the record" from which a rational factfinder could infer that partial redaction would suffice. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021). Thus, a "reasonable view of the record would permit resolution of [the] factual dispute in favor of" Appellants, and summary judgment for DOJ was unwarranted. *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020). The contrary evidence comes from three sources: Judge Gleeson's factual findings, the Monitor's opinion, and DOJ's publicly filed Quarterly Report.

### 1.    Judge Gleeson's factual findings that disclosure would not cause harm contradict DOJ's evidence that it would.

As shown above, *see* Section IV.B, *supra*, Judge Gleeson considered the three interests DOJ advanced in the District Court: encouraging HSBC's cooperation with

- 32 -

federal authorities, maintaining DOJ's relationship with foreign regulators, and thwarting crime.  He held that all three interests could overcome the First Amendment right of access.  But he also held, after considering the same arguments and evidence that DOJ advanced here, and after reviewing the whole Monitor Report *in camera*, that disclosing parts of the Monitor Report would not harm them.  So he ordered what appear to be extensive redactions to the report, including "all of the redactions requested by the government."  *HSBC II* at 2.

To address HSBC's compliance with federal regulators and the Monitor, he redacted "[i]dentifying information about HSBC employees, including names and dates of employee interviews."  *Id*.  To address DOJ's relationships with foreign regulators, he redacted "[c]ountry names and explicit references to confidential material provided by foreign jurisdictions," *id*., including all the appendices to the report that concerned foreign jurisdictions, *HSBC I*, 2016 WL 347670, at *6.  To address concerns about thwarting crime, he redacted "[i]nformation detailing the processes by which criminals could exploit HSBC, including dates of proposed implementation of policies that would strengthen HSBC's anti-money laundering and sanctions compliance programs."  *HSBC II* at 2.[7]  And after making these

---

[7] Judge Gleeson also redacted proprietary information analogous to the concerns underlying Exemption 4.  *See HSBC II* at 2.

redactions, he found that some of the Monitor Report was left over. He ordered that part unsealed.

Though these findings need not compel a rational factfinder, and thus did not bind the District Court, they could lead one to conclude that withholding the whole Monitor Report was unnecessary to protect the interests underlying Exemption 8. So they created a "genuine dispute over a question of material fact" and precluded summary judgment for DOJ. *Hall*, 956 F.3d at 630.

The District Court took no issue with any of Judge Gleeson's factual findings, including his findings that redaction would satisfy all the interests he identified. Instead, the District Court held them immaterial because Judge Gleeson conducted his analysis under the First Amendment right of access rather than FOIA. J.A.148-51. But while these doctrines are no doubt distinct, that distinction should have made no difference here.

Both FOIA and the First Amendment right of access start from a presumption of disclosure. *See* 5 U.S.C. § 552(a)(3)(A) (requiring agencies to "make the records promptly available to any person"); *see also Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984) (articulating "presumption of openness"). Under both doctrines, the party aiming to restrict disclosure must take two steps.

- 34 -

First, it must identify an interest sufficient to overcome the presumption. Under FOIA, the interests are derived from the statute's exemptions. *See* 5 U.S.C. § 552(b) (providing specific exemptions to disclosure). Under the First Amendment, these interests are defined by the Constitution as interpreted by precedent. *See, e.g.*, *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 607 (1982) (holding that "safeguarding the physical and psychological well-being of a minor" can overcome the First Amendment access right).

Second, the party aiming to restrict disclosure must show that doing so is necessary to serve that interest. FOIA does this through its foreseeable harm requirement, informed by its provisions on segregability. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I) (permitting agency to "withhold information" only if its disclosure would cause foreseeable harm); *see also* 5 U.S.C. § 552(a)(8)(A)(ii)(II) (providing that an agency shall "take reasonable steps necessary to segregate and release nonexempt information"); 5 U.S.C. § 552(b) (providing that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"). The First Amendment does this by requiring redaction to be "narrowly tailored" to the interest that justifies it. *Press-Enter. Co. v. Superior Ct. of California for*

*Riverside Cnty.*, 478 U.S. 1, 13-14 (1986); *see also United States v. Gerena*, 869 F.2d 82, 85-86 (2d Cir. 1989) (applying same standard to redactions).[8]

Any difference between FOIA and the First Amendment must stem from one of these two steps. The District Court discussed both. On the first, the court observed, correctly, that each doctrine determines the interests that can overcome the disclosure presumption. Of course, the interests might overlap. *Compare, e.g.*, *Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) (holding that national security interests can overcome First Amendment access right) *with* 5 U.S.C. § 552(b)(1) (exempting classified information from FOIA). And they largely did in this case: Judge Gleeson held that the three interests DOJ advances under Exemption 8—encouraging cooperation with federal authorities, maintaining relations with foreign regulators, and thwarting crime—***can*** overcome the public's First Amendment access right. But because Judge Gleeson did not consider the fourth interest—upholding public confidence in HSBC and preventing an unwarranted run on banks—he did not, according to the District Court, impose redactions based on all the interests required by FOIA. J.A.150-51.

---

[8] The First Amendment imposes other requirements, such as notice to the public of sealing and on-the-record judicial findings justifying it. *See Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991). But those requirements are procedural and have no bearing here.

Appellants agree. Judge Gleeson did not make redactions based on loss of public confidence leading to an unwarranted run on banks. That is because DOJ did not ask him to. So his findings do not create a genuine dispute of material fact as to that one interest. But as argued above, DOJ did not ask the District Court to rely on that interest either and introduced no evidence on the subject. *See* Section VI.B.2, *supra*. DOJ plainly failed to meet its burden as to that interest.

On the second step, the District Court held that Judge Gleeson did not "impose redactions … as liberally as Exemption 8 would require" for the three harms he identified. J.A.151. But the court did not say why.[9] And assuming Judge Gleeson properly applied the First Amendment's narrow tailoring requirement—which the District Court did not dispute—a rational factfinder could conclude that he *did* impose redactions as liberally as Exemption 8 would require. That is because there is no daylight between narrow tailoring under the First Amendment and foreseeable harm under FOIA.

Under the First Amendment's narrow tailoring requirement, courts must release judicial documents if sealing them is not necessary to further a First Amendment-cognizable interest. The analysis applies not just to records, but

---

[9] It is also wrong as a matter of black letter FOIA law: Exemption 8 does not require agencies to withhold anything. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979) ("Congress did not design the FOIA exemptions to be mandatory bars to disclosure.").

information within records.  Thus, courts may be required to unseal parts of judicial records but permitted to redact others.  *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 & n.22 (2d Cir. 2019) (ordering release of summary judgment records with redactions to protect personal identifying information, alleged minor victims of sexual abuse, and testimony obtained under an assurance of confidentiality); *U.S. v. Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (affirming redaction of paragraph of plea agreement because it was necessary to protect grand jury secrecy).  Of course, the narrow tailoring requirement accounts for practical considerations, such as whether it is possible to disentangle properly redacted information from other parts of the record.  *See U.S. v. Cojab*, 996 F.2d 1404, 1409 (2d Cir. 1993) (affirming sealing order that "properly rejected the feasibility of redaction").

FOIA's foreseeable harm requirement works the same way.  Indeed, the statute could not be plainer in its instruction that agencies withhold a given part of a record only if disclosing that specific part would cause harm.  *See* 5 U.S.C. § 552(a)(8)(A)(i)(I) ("An agency shall … withhold information under this section only if … the agency reasonably foresees that disclosure would harm an interest protected by an exemption.").  Neither could this Court have been in *Reporters Committee*: it construed the requirement to allow withholding only if the agency can articulate a "link between the specified harm and ***specific information*** contained in the material

withheld." *Reps. Comm.*, 3 F.4th at 369 (emphasis added). That is just narrow tailoring by another name.

FOIA's segregability requirement bolsters this conclusion. Nearly five decades ago, this Court held that "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Congress strengthened that requirement in 2016, when it also enacted the foreseeable harm requirement, adding a provision requiring agencies to "consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible" and "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(8)(A)(ii). This emphasizes that, if information within a record would not cause foreseeable harm, then the agency must release it. Again, that is what narrow tailoring means under the First Amendment.

Finally, the District Court rejected Judge Gleeson's analysis as immaterial because it saw Judge Gleeson's unsealing decision as an exercise of discretion. *See* J.A.149 ("Granting a First Amendment right of access claim lies largely within the discretion of a judge."). But whether Judge Gleeson's unsealing decision was an exercise of discretion is beside the point. The dispute of material fact arises not from Judge Gleeson's decision to unseal, but from his express factual findings that

disclosing parts of the Monitor Report would not cause the harms DOJ advances here. Nothing about a factual finding is discretionary.

Plus, Judge Gleeson's decision was not an exercise of discretion. As Judge Gleeson recognized, a court has discretion to seal only if it determines that the First Amendment right does not attach to the record or is not overcome. See *HSBC I*, 2016 WL 347670, at *5 ("Even if the First Amendment right of access has attached to a judicial document, a court ***may*** still seal that document in whole or in part if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.") (cleaned up, emphasis added). So discretion can come into play only when the First Amendment does not compel unsealing. But Judge Gleeson's analysis made clear that his decision was compelled by the First Amendment. See *id*. at *7 ("I find that the parties have set forth several interests that warrant withholding or redacting portions of the Monitor's Report. But because my sealing order must be narrowly tailored to achieve the aim of sealing only when necessary to preserve higher values, I also find that the majority of the Report and the United States Country Review Report will be made public.") (cleaned up). Thus, he did not exercise discretion.

Thus, the District Court was wrong to reject Judge Gleeson's analysis on DOJ's three harms as immaterial to FOIA solely because he performed it under the First Amendment. Judge Gleeson's factual findings could therefore lead a rational

factfinder to conclude that disclosing some parts of the Monitor Report would not cause foreseeable harm. The District Court erred by granting DOJ summary judgment.

**2. The Monitor's opinion that disclosure would not cause harm contradicts DOJ's opinion that it would.**

The Monitor who wrote the report stated unambiguously that "a redacted report that does not negatively impact the Monitor's work can be produced." J.A.44. This passage speaks to all three interests DOJ advanced, since the Monitor discussed them all in the paragraphs of his affidavit leading up to this one. On encouraging cooperation with federal authorities, he said, "maintaining the confidentiality of the [Monitor Report] is in the interest of an effective monitorship because it is clear to me that confidentiality encourages cooperation from the employees of HSBC Group." J.A.44. On relations with foreign regulators, he stated that "if the [Monitor Report] were to be made public, the level of support that I would receive from foreign banking regulators could decrease substantially." J.A.44. And on thwarting crime, he said that confidentiality "will help to ensure that those who seek to use HSBC Group's financial network to launder funds or violate the sanctions laws do not have sensitive information that they could use to further their criminal objectives." J.A.44. Even after considering all three interests, the Monitor still believed that the report he wrote could be made public without harming them. That, surely, is "contrary evidence in the record" from which a rational factfinder could

- 41 -

conclude releasing parts of the Monitor Report would not cause foreseeable harm. *Reps. Comm.*, 4 F.4th at 361. And it is hard to see how DOJ could disagree, since the Monitor's affidavit was the agency's own evidence.

True, the Monitor stated that the releasable parts, on their own, would "materially change[]" the report, giving it "less factual support," and "might" make it "too conclusory to be persuasive" or not "fully comprehensible." J.A.44. But no FOIA exemption allows an agency to withhold a record because its redactions "might" make it seem unpersuasive or change its meaning to some degree. *See DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989) (holding that FOIA's exemptions are "explicitly exclusive"). Even if one did, the Monitor's statement about how the public "might" perceive his report is too speculative for foreseeable harm. *See Reps. Comm.*, 3 F.4th at 369-70 (holding agency cannot meet foreseeable harm burden by showing that disclosure "could" cause harm).

Despite relying heavily on the Monitor's affidavit, the District Court said nothing at all about the Monitor's conclusion that releasing parts of his report would cause no harm. *See* J.A.85, J.A.86, J.A.98, J.A.101, J.A.131, J.A.132, J.A.133. That was reversible error. They plainly create a dispute of fact requiring the denial of DOJ's motion for summary judgment.

### 3.    DOJ's public summary of the Monitor Report undermines its conclusion that releasing any part of it would cause foreseeable harm.

DOJ filed the Quarterly Report on Judge Gleeson's docket.  *See* Quarterly Report.  It did not seek to file any part of the Quarterly Report under seal.  The Quarterly Report characterized the Monitor Report's conclusions in various ways.  For example:

- It said that the Monitor assessed that "HSBC Group continues to act in good faith to meet the requirements of the DPA."  Quarterly Report at 1.

  - It outlined several areas in which the Monitor believed HSBC had "made progress": "risk assessment, 'Know Your Customer' information and customer due diligence processes, compliance monitoring and testing, transaction monitoring alert adjudication and suspicious activity reporting, distribution of information to management, responses to potential financial crime violations, and incentivizing AML and sanctions compliance through compensation adjustment."  *Id*. at 2.

- It outlined two areas where the Monitor "believes that HSBC Group's progress has been too slow," though not as a "result of bad faith or lack of commitment by HSBC Group's senior leadership," *id*. at 2: corporate culture and compliance technology, *see id*. at 4.

- It stated the Monitor's conclusion that HSBC's anti-money laundering policies are "consistent with United Kingdom, European Union, Hong Kong and United States requirements, as well as global best practices."  *Id*. at 2.

- It described specific incidents of bad corporate culture by HSBC as identified by the Monitor, including that "senior managers of HSBC Bank USA's Global Banking and Markets ('GBM') business line inappropriately pushed back against adverse findings by the HSBC Global Internal Audit team and HSBC Bank USA's Compliance Testing and Control ('CTAC') team.  *Id*. at 3.  It also related the Monitor's conclusion that "the GBM business in the United States demonstrated a deficient

culture that had not fully accepted the role and legitimacy of the Internal Audit and control functions." *Id*. And it said what HSBC did about the problem: reassigning the Regional Head of the Americas for GBM and reducing his 2014 annual bonus by 50% and his total compensation by 14%. *See id*. at 3-4.

- In connection with the corporate culture issue, DOJ quoted verbatim in the Quarterly Report a "directive to senior HSBC employees" stating (in part) the following: "At my direction, our Global Internal Audit team is holding us to a higher standard than in the past. Therefore, we should expect to have more insightful and critical audits." *Id*. at 4.

- It conveyed the Monitor's conclusion that "HSBC Group's compliance technology systems continue to suffer from fragmentation and lack of connectivity." *Id*. at 4.

And so on. *See* Quarterly Report at 1-6.

DOJ placed this material on the public docket without trying to seal it. A rational factfinder could conclude that it did so because disclosing it would not harm any of the interests DOJ now identifies. This suggests that similar passages in the Monitor Report, especially those describing the Monitor's high-level conclusions, would also not cause harm.

The District Court did not consider the Quarterly Report. As such, its conclusion on foreseeable harm was erroneous and requires reversal.

\*\*\*

Together and apart, Judge Gleeson's factual findings, the Monitor's opinion, and DOJ's public filings are "contrary evidence in the record" from which a rational factfinder could conclude that disclosing some parts of the Monitor Report would

not cause foreseeable harm.  *Reps. Comm.*, 3 F.4th at 361.   Thus, the District Court erred by granting DOJ's motion for summary judgment.

### D.    The District Court abused its discretion by denying *in camera* review.

The District Court should not have granted summary judgment to DOJ without conducting an *in camera* review.[10]   The District Court exhibited a not uncommon "judicial reluctance to assume an active role in reviewing FOIA claims." *Allen v. CIA*, 636 F.2d 1287, 1297 (D.C. Cir. 1980).  But as this Court has explained, Congress has twice amended FOIA to overrule Supreme Court decisions exhibiting that same reluctance.  *See id*.  Congress passed those amendments recognizing that applying FOIA's *de novo* review provision, 5 U.S.C. § 552(a)(4)(B), requires "that in certain cases … in camera inspection will plainly be necessary and appropriate." *Id*. (cleaned up).  This is one of them.

Appellants requested *in camera* review for a reason that appears unique to this case: DOJ's foreseeable harm argument contradicts the prior factual findings of another district court judge.  This amply satisfies one of the two situations in which this Court has held *in camera* review mandatory: "if information contained in agency

---

[10]   Conversely, the District Court could have granted summary judgment to Appellants under *Celotex* based solely on DOJ's failure to meet its burden through its declarations and exhibits.  *See* Section VI.B, *supra*.  Should this Court agree with Appellants, *in camera* review would be unnecessary to test that claim, but still would be required to determine which parts DOJ may properly redact.  *See* Section VI.D, *infra*.

affidavits is contradicted by other evidence in the record." *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). Indeed, as discussed above, Rule 56 precludes summary judgment for the agency in this circumstance, and the only alternative to resolve a factual dispute would be a full-blown trial, which are rare in FOIA cases.

But even if Judge Gleeson's factual findings do not qualify as contrary evidence in the record, as the District Court held, the court should have conducted that review anyway. For it would remain true that the District Court would have based a nearly identical decision on strictly less information than a co-equal district court judge. Refusing *in camera* review in these circumstances undermined principles of judicial comity, and was simply imprudent.

Finally, *in camera* review would not have been onerous. *See Allen*, 636 F.2d at 1298 (holding judicial economy relevant to *in camera* review). While the Monitor Report is approximately 1,000 pages, Appellants do not contest Judge Gleeson's redaction of five of the six appendices dealing with foreign countries. *See HSBC I*, 2016 WL 347670, at *6. That would presumably excise much of the report straightaway. And the District Court would not have been going blind. DOJ proposed specific redactions to Judge Gleeson to address the same harms it advanced in the District Court; DOJ could have given them to the District Court.

- 46 -

In the unique circumstances of this case, the District Court abused its discretion by refusing to conduct *in camera* review.

### E.    The Court should remand for further proceedings, including *in camera* review.

Unless the Court affirms, further district court proceedings will be necessary. Appellants do not dispute that DOJ could properly withhold parts of the Monitor Report under Exemption 8 and the foreseeable harm requirement.    The District Court will need to separate these parts from the passages that the agency must disclose.  It should do so via *in camera* review for the reasons just discussed.  It should also order DOJ to produce a *Vaughn* index justifying its reasons for redacting each individual passage, and afford Appellant the opportunity to respond, all of which is necessary for "adequate adversary testing."  *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

In addition, the District Court has not ruled on DOJ's other asserted exemptions.  Those exemptions remain to be litigated.  But Appellants submit that any such litigation should include *in camera* review and a *Vaughn* index, especially since, like DOJ, HSBC already identified for Judge Gleeson passages it believes to contain proprietary information of the kind that Exemption 4 would protect (though Judge Gleeson did not accept all HSBC's redactions).  And since Judge Gleeson has

already addressed DOJ's and HSBC's proposals, the District Court should, in an exercise of prudence, examine the passages Judge Gleeson deemed harmless.[11]

## VII.    CONCLUSION

This Court should reverse.  It should order that the District Court enter summary judgment for Appellants on Exemption 8 foreseeable harm.  And it should remand for the District Court to consider, after *in camera* review and a *Vaughn* index, which passages of the Monitor Report DOJ may lawfully withhold under that and DOJ's other asserted exemptions.

Dated: June 21, 2023

Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew V. Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone: (312) 243-5900
Facsimile: (312) 243-5902
Email: matt@loevy.com
match@loevy.com
FOIA@loevy.com
*Counsel for Plaintiff-Appellants*

---

[11] Appellants do not contend that the District Court is bound to agree with all Judge Gleeson's redactions.  It can redact more or less depending on its own determinations about foreseeable harm.

- 48 -

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

I certify that the foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 11,134 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit R. 32(e)(1).

I certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: June 21, 2023          */s/ Stephen Stich Match*
                             Stephen Stich Match
                             *Counsel for Plaintiff-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, I caused copies of the foregoing Appellants' Opening Brief to be served on all counsel of record via the Court's ECF filing system.

Dated: June 21, 2023          */s/ Stephen Stich Match*
                             Stephen Stich Match
                             *Counsel for Plaintiff-Appellants*

- 49 -