**ORAL ARGUMENT NOT YET SCHEDULED**

**22-5300**

————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————————

JASON LEOPOLD and BUZZFEED, INC.,

*Plaintiff/Appellants*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant/Appellee.*

————————————————

On Appeal from the United States District Court
For the District of Columbia
(No. 1-19-cv-03192, Honorable Rudolph Contreras)

————————————————

**REPLY BRIEF OF PLAINTIFF/APPELLANTS**

————————————————

Stephen Stich Match
Matthew Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone:  (312) 243-5900
Facsimile:  (312) 243-5902
Email:  match@loevy.com

*Attorneys for Plaintiff-Appellants*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................ ii

**GLOSSARY** ...................................................................................... v

I.    **INTRODUCTION** ................................................................... 1

II.   **SUMMARY OF ARGUMENT** ............................................... 1

III.   **ARGUMENT** ............................................................................ 4

    A. **The foreseeable harm requirement applies to Exemption 8 like all other exemptions** ............................................ 4

    B. **DOJ cites no evidence to withhold the whole Monitor Report** ................ 8

       1. **Confidentiality assurances with foreign regulators do not justify withholding parts concerning only the United States** ......................... 8

       2. **Encouraging candor can be satisfied through redaction** .................... 14

       3. **Securing financial institutions does not require complete withholding** ........................................ 16

       4. **Partial disclosure is not "trivial"** ......................................... 18

    C. **Appellants' contrary evidence warrants reversal** ..................................... 21

    D. **The District Court should have reviewed the Monitor Report *in camera*** ............................... 24

IV.   **CONCLUSION** ....................................................................... 26

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)** ................ 27

**CERTIFICATE OF SERVICE** ........................................................ 27

# <u>TABLE OF AUTHORITIES</u>

***Page***

***Cases***

*Bartko v. DOJ*, 898 F.3d 51 (D.C. Cir. 2018).............................................6

*Consumers Union of U. S., Inc. v. Heimann*, 589 F.2d 531 (D.C. Cir. 1978).....6, 15

*DiBacco v. Dep't of the Army*, 926 F.3d 827 (D.C. Cir. 2019) ...............................11

*\*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) .................2, 5, 7

*Friends of Animals v. Bernhardt*, 15 F.4th 1254 (10th Cir. 2021) ..........................11

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365
(D.C. Cir. 2000) .....................................................................................10

*Gregory v. Fed. Deposit Ins. Corp.*, 631 F.2d 896 (D.C. Cir. 1980)....................5, 6

*In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630
(D.C. Cir. 1992) .....................................................................................15

*Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ....18, 19

*NARA v. Favish*, 541 U.S. 157 (2004) .....................................................25

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)....................................18

*Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*,
57 F.4th 1061 (D.C. Cir. 2023)......................................................18, 19, 23

*Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898 (D.C. Cir. 1999) .................3

*Pub. Citizen v. Farm Credit Admin.*, 938 F.2d 290 (D.C. Cir. 1991).......................6

*Pub. Invs. Arb. Bar Ass'n v. S.E.C.*, 771 F.3d 1 (D.C. Cir. 2014)............................6

\*Authorities upon which we chiefly rely are marked with asterisks.

*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350
(D.C. Cir. 2021) ...............................................................6, 7, 8, 15, 18, 22

*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, 2013 WL 3306161
(E.D.N.Y. July 1, 2013) ...................................................................................19

*U.S. v. HSBC Bank USA, N.A.,* No. 12-CR-763, 2016 WL 347670
(E.D.N.Y. Jan. 28, 2016) .........................................................9, 14, 20, 24

*U.S. v. Moore*, 824 F.3d 620 (7th Cir. 2016) ...........................................12

*U.S. v. Slatten*, 865 F.3d 767 (D.C. Cir. 2017) .........................................12

*U.S. v. Washingt*on, 106 F.3d 983 (D.C. Cir. 1997) ...............................12

## Statutes

28 U.S.C. § 1746(1) .............................................................................12

5 U.S.C. § 552 .......................................................................................11

5 U.S.C. § 552(a)(8)(A)(i)(I) .................................................................5

5 U.S.C. § 552(a)(8)(A)(i)(II) ...............................................................5

5 U.S.C. § 552(b) .................................................................................24

## Other Authorities

Fed. R. Civ. P. 56(c)(4)........................................................................11

Fed. R. Evid. 803 .................................................................................11

Fed. R. Evid. 807(a)(1), (2).................................................................12

H.R Rep. No. 114-391 (2016)..........................................................6, 23

Letter from United States Attorney for the Eastern District of New York to
Hon. John Gleeson, *U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763
(Apr. 1, 2015), ECF No. 33 ...................................................................9

Memorandum of Points and Authorities in Support of Defendant's Renewed
Motion for Summary Judgment, *Leopold v. DOJ*, No. 19-cv-03192,
(D.D.C. Sept. 13, 2021), ECF No. 34-2......................................................25

S. Rep. No. 114-4 (2016) ...............................................................7, 22, 23

*U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, (E.D.N.Y. Mar. 9, 2016),
ECF No. 70 ...................................................................................................25

## GLOSSARY

| | |
|---|---|
| BNM | Central Bank of Malaysia |
| DPA | Deferred prosecution agreement |
| DOJ | Department of Justice |
| FCA | Financial Conduct Authority (U.K. Regulator) |
| FRB | Federal Reserve Bank |
| FOIA | Freedom of Information Act |
| HSBC | HSBC Holdings plc |

## I.    INTRODUCTION

Barely citing the District Court's decision, DOJ offers no sound reason to affirm. Its half-formed argument that agencies may withhold all Exemption 8 material, period, defies the text of FOIA's foreseeable harm requirement, Supreme Court and Circuit precedent, and common sense. DOJ continues to cite grounds for withholding the whole Monitor Report that are speculative, conclusory, unrelated to the records at issue in this case, and inadmissible hearsay. It gives no persuasive reason to discount the contrary views of the independent monitor who wrote the report and the only judge to have seen it. And its argument made for the first time on appeal—that it properly withheld substantive parts of the report that it deemed "trivial"—both lacks any legal basis and, if accepted, would invite abuse.

The Court should reverse, order summary judgment in favor of Appellants on Exemption 8 foreseeable harm, and remand for further proceedings, including a *Vaughn* index from DOJ and *in camera* review by the District Court.

## II.    SUMMARY OF ARGUMENT

DOJ first asks this Court to rewrite FOIA to afford "absolute protection to records shielded by Exemption 8." Appellee Br. at 3 (cleaned up). The Court should decline. DOJ ignores the text of the foreseeable harm requirement, which has no exception for Exemption 8, and instead relies almost entirely on legislative history. But just four years ago the Supreme Court reversed this Court for making the precise

error DOJ reinvites: choosing legislative history over FOIA's text.  *See Food Mktg.*

*Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019).

DOJ also fails to meet its burden of establishing, in a concrete and context-specific way as required by this Court's precedent, that no part of the report can be released without causing foreseeable harm—even parts that the federal judge overseeing the underlying case found suitable for public release.  Its brief overpromises and its evidence underdelivers.  Some highlights:

- DOJ argues that disclosing U.S.-only information would deter foreign regulators from cooperating with future monitors.  This despite the foreign regulators themselves only saying, plausibly enough, that they care about disclosures related to foreign countries.

- DOJ argues that disclosing even part of the Monitor Report would reduce HSBC employees' candor with the Monitor.  This despite Judge Gleeson's factual finding—not disputed by DOJ—that a redacted report would anonymize the employees.

- DOJ argues that disclosing any part of the Monitor Report would undermine the security of financial institutions.  This despite conceding that HSBC has rectified some of the security problems outlined in the report, and the absence of any evidence or argument that every part—including the background and table of contents—discloses a security problem at all, let alone one presently suffered by another institution.

- For the first time on appeal, DOJ argues that the Monitor Report's table of contents and other unspecified parts are too "trivial" to be worth disclosing.  This despite the substantial public interest in understanding why DOJ pulled the plug on prosecuting one of the world's largest banks on the heels of the 2008 financial crisis and whether HSBC's unusual diversion led it to stop committing crimes.

- DOJ barely cites the prospect that disclosing only part of the Monitor Report might undermine public confidence in HSBC.  This despite

public confidence being the main interest protected by Exemption 8 and the District Court's primary (perhaps sole) basis for finding foreseeable harm.

Thus, DOJ did not meet its burden to justify withholding the whole Monitor Report. The District Court should have granted summary judgment to Appellants and conducted an *in camera* review to decide which parts of the Monitor Report would cause harm and which would not. *See Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 906 (D.C. Cir. 1999) (affirming grant of summary judgment to requester because agency declaration "contains only conclusory assertions" and thus "fails to raise a dispute as to any material issue of fact").

But even if DOJ did raise an issue of fact as to foreseeable harm, it offers no sound reason to discount Appellant's contrary evidence: primarily, Judge Gleeson's factual findings and the Monitor's opinion. Though issued as part of a First Amendment analysis, Judge Gleeson's findings reflect the same presumption of openness as FOIA's foreseeable harm requirement. And the Monitor's ultimate support for non-disclosure is immaterial because his reason for it—that his report would lack some factual context and be less persuasive—is both disputed by a contrary factual finding by Judge Gleeson and not a cognizable reason for withholding under FOIA. What matters is his conclusion that DOJ can release a redacted version of his report without causing harm. So at best there is a dispute of

- 3 -

fact as to foreseeable harm.  The District Court should have reviewed the Monitor Report *in camera* to resolve that dispute.

This case calls for *camera* review, whether because the District Court abused its discretion by failing to conduct one or as a remedy on remand.  DOJ has not supplied any evidence that would allow the District Court to separate the harmful parts from the harmless ones.  A *Vaughn* index on remand would mitigate that concern, and DOJ should be ordered to provide one.  But because Judge Gleeson has already reviewed the report and redacted it after considering DOJ's specific redaction proposals, the District Court should review Judge Gleeson's redactions out of both prudence and comity.

### III.    ARGUMENT

**A.    The foreseeable harm requirement applies to Exemption 8 like all other exemptions.**

DOJ argues, for the first time on appeal, that FOIA's foreseeable harm requirement has no impact on what it may withhold under Exemption 8 because that exemption, according to DOJ, provides "absolute protection."  Appellee Br. at 3, 21-22.  Its precise argument is unclear.  As best Appellants can tell, DOJ appears to argue that the foreseeable harm requirement does not apply to Exemption 8.

That is wrong.  The text is clear.  With one exception, foreseeable harm is a prerequisite to withholding: "An agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest

- 4 -

protected by an exemption described in subsection." 5 U.S.C. § 552(a)(8)(A)(i)(I) (cleaned up). That one exception occurs when "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i)(II). Exemption 8 does not prohibit disclosure. *See Gregory v. Fed. Deposit Ins. Corp.*, 631 F.2d 896, 899 (D.C. Cir. 1980) (*per curiam*) (noting in connection with Exemption 8 that "[t]he agency is free to release records"). DOJ has no response to the statute's plain text. It does not even discuss it.

Instead, DOJ relies primarily on the Senate Report to the FOIA Improvement Act, which says that the statute was "not intended to lessen the protection under Exemption 8 created by Congress and traditionally afforded by the courts." Appellee Br. at 22 (quoting S. Rep. No. 114-4, at 10 (2016)). In doing so, DOJ asks this Court to commit the precise error for which it was recently reversed in *Argus Leader*: "inappropriately resort[ing] to legislative history before consulting the statute's text and structure." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). As the Supreme Court explained, DOJ's approach "is a relic from a bygone era of statutory construction." *Id*. (quotation omitted). And it reiterated that "this Court has repeatedly refused to alter FOIA's plain terms on the strength only of arguments from legislative history." *Id*. (collecting cases). No reasonable reader could conjure an Exemption 8 carve-out from the foreseeable harm provision, whatever the Senate Report might say, and DOJ offers no textual basis to do so.

Even if we remained in the "bygone era of statutory construction," however, the legislative history is far from clear.  The House Report accompanying the House's companion bill notes that one Representative "offered an amendment to clarify that the presumption of openness language is not intended to lessen the protection by exemption 8 of FOIA," but withdrew that amendment.  H.R Rep. No. 114-391, at 18 (2016).[1]  In the House's version of the bill, the "presumption of openness" language embodies the foreseeable harm requirement.  *See id*. at 2.  Thus, some Members of Congress decided ***against*** treating Exemption 8 differently from the others.  Such ambiguous legislative history would be insufficient even if it was properly considered notwithstanding the plain text of the statute.

DOJ also cites cases holding that Exemption 8 has a broad scope.  These cases hold that Exemption 8 covers lots of records.  *See Consumers Union of U. S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978); *Gregory*, 631 F.2d at 898; *Pub. Citizen v. Farm Credit Admin*., 938 F.2d 290, 292-93 (D.C. Cir. 1991) (*per curiam*); *Pub. Invs. Arb. Bar Ass'n v. S.E.C.*, 771 F.3d 1, 4-5 (D.C. Cir. 2014); *Bartko v. DOJ*, 898 F.3d 51, 74 (D.C. Cir. 2018).  This includes *Gregory*'s statement that Exemption 8 affords "absolute protection," which DOJ repeatedly cites.  *See Gregory*, 631 F.2d at 898; Appellee Br. at 3, 21-22.

---

[1] This Court has cited the House Report when construing the foreseeable harm requirement.  *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).

But these cases are all red herrings.  Appellants do not dispute that Exemption 8 has a broad scope or that it covers the Monitor Report.  The question is whether the foreseeable harm requirement imposes an independent burden.  These cases do not address that question.  Nor could they, for all the FOIA requests filed in these cases predate the foreseeable harm requirement.

Finally, DOJ invokes "the importance of the interests protected by Exemption 8."  Appellee Br. at 21.  But all exemptions protect important interests.  *See Argus Leader*, 139 S. Ct. at 2366.  Congress enacted the foreseeable harm requirement anyway with the express purpose of limiting the material agencies may withhold, and in particular material falling under the text of an exemption.  Congress did so because it recognized that the exemptions' texts are broader than the interests they protect.  *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (discussing origins of foreseeable harm requirement).  *See also* S. Rep. No. 114-4, at 3 (2016) ("There is a growing and troubling trend towards relying on these discretionary exemptions to withhold large swaths of Government information, even though no harm would result from disclosure.").  DOJ offers no sound reason to treat Exemption 8 differently.  And in any case, such policy arguments cannot trump the text.  *See Argus Leader*, 139 S. Ct. at 2366 (declining to construe FOIA exemption for policy reasons that conflict with the text).

The foreseeable harm requirement imposes an "independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th at 369. That burden requires the agency to provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue," cause foreseeable harm. *Id*. at 370. This is true under Exemption 8 just like the other exemptions.

### B. DOJ cites no evidence to withhold the whole Monitor Report.

DOJ has not met its burden to establish foreseeable harm, as required by the statute. To begin, DOJ barely references the District Court's primary (perhaps sole) ground for holding that disclosing every individual part of the Monitor Report would cause foreseeable harm: undermining public confidence in HSBC. *See* J.A.150. Contrary to what the agency projects in its brief, the actual evidence it cites (admissible and inadmissible) justifies withholding only part of the report. Separating the harmful from harmless parts requires *in camera* review informed by Judge Gleeson's redactions. That review is especially important given DOJ's new and incorrect argument on appeal: that it properly withheld unspecified parts of the report for being "trivial."

### 1. Confidentiality assurances with foreign regulators do not justify withholding parts concerning only the United States.

DOJ first argues that disclosing even part of the Monitor Report would undermine assurances of confidentiality given to foreign regulators and thus "harm

the prosecution of other financial institutions."  Appellee Br. at 12.  Like Judge Gleeson, Appellants believe this can justify withholding the parts of the Monitor Report dealing with foreign countries.  As Judge Gleeson noted, these parts are easily segregable because each country has its own dedicated appendix, which DOJ can withhold in their entirety (apart from the United States appendix).  *See U.S. v. HSBC Bank USA, N.A.,* No. 12-CR-763, 2016 WL 347670, at \*6 (E.D.N.Y. Jan. 28, 2016) ("*HSBC I*"), *rev'd*, 863 F.3d 125 (2d Cir. 2017).  But DOJ goes one step further and argues that keeping promises to foreign regulators justifies withholding parts that involve only the United States.  Appellee Br. at 12-15.

DOJ's sweeping argument is nonsensical.  It identifies no reason that a foreign regulator would care if DOJ discloses information that only concerns the United States.  This likely explains why DOJ felt comfortable disclosing, on Judge Gleeson's public docket, specific examples of HSBC USA's corporate culture problems while omitting reference to similar problems in other countries.  *See* Letter from United States Attorney for the Eastern District of New York to Hon. John Gleeson, *U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763 (Apr. 1, 2015), ECF No. 33, at 3-4.

The foreign regulators' letters confirm that these regulators do not care about information that only concerns the United States.  The Central Bank of Malaysia ("BNM"), for instance, wrote of an "assurance given to BNM that any information

- 9 -

gathered by the Monitor *from HSBC Malaysia* would be solely used for the purposes of evaluating the effectiveness of internal controls, policies and procedures *of HSBC Malaysia*." J.A.59 (emphases added). The assurance was Malaysia-specific. The regulator also stated that the Monitor Report would be "treated with the utmost confidentiality, consistent with the confidentiality provisions *in our legislation*." *Id*. (emphasis added). But neither DOJ nor the Malaysian regulator claims that Malaysian legislation imposes a confidentiality obligation that restricts what an American law enforcement agency may share with an American reporter under an American transparency law about an American bank's activities in America.

DOJ also cites letters from regulators from Hong Kong and the UK. But these letters are irrelevant to DOJ's assurance-of-confidentiality argument. While the regulators do not support disclosing the Monitor Report for similar reasons to DOJ, neither discusses any assurances they might have received. *See* Appellee's Br. at 13 (quoting Hong Kong regulator's statement that disclosing the Monitor Report would present "practical difficulties" by "inadvertently limiting the extent to which whistle blowers and staff will come forward and candidly communicate with the Monitor."). *See also generally* J.A.49-58.

In any case, the District Court properly excluded the foreign regulators' letters as hearsay. *See* J.A.95-96. *See also, e.g.*, *Gleklen v. Democratic Cong. Campaign*

*Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (declining to consider hearsay on summary judgment where it was not shown that the hearsay was "capable of being converted into admissible evidence"). DOJ first argues that all hearsay is admissible in FOIA cases. *See* Appellees' Br. at 13-14. But it identifies no authority for that proposition in statute or rule. There is none. *See generally* 5 U.S.C. § 552 (lacking a hearsay exception for FOIA cases); Fed. R. Evid. 803 (same).

DOJ instead cites only *DiBacco v. Dep't of the Army*, 926 F.3d 827 (D.C. Cir. 2019). But *DiBacco* does not address hearsay. It instead holds that declarations describing an agency's search in FOIA cases may contain "information … relayed to [the declarant] by her subordinates without running afoul of Rule 56," *id*. at 833, in particular its requirement that summary judgment declarations be "made on personal knowledge." Fed. R. Civ. P. 56(c)(4). To the extent *DiBacco* bears on hearsay, DOJ offers no basis for extending it beyond an agency superior's relaying information conveyed by a subordinate in the ordinary course of business, which this case does not involve. Indeed, the only circuit court to squarely consider extra-agency hearsay in a FOIA case held without qualification that it is inadmissible. *Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1271-74 (10th Cir. 2021).

DOJ also argues that the foreign regulators' letters satisfy the residual hearsay exception. *See* Appellee Br. at 14. This exception requires the proponent to demonstrate both "sufficient guarantees of trustworthiness" and that the statement

"is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(1), (2). The exception is "extremely narrow," and the proponent "bears a heavy burden to come forward with indicia of both trustworthiness and probative force."  *U.S. v. Washingt*on, 106 F.3d 983, 1001-02 (D.C. Cir. 1997).

The District Court properly rejected the residual exception on the second prong, holding that it would have been reasonable for DOJ to obtain sworn declarations.  J.A.95.[2]  DOJ says that there are "significant practical difficulties in asking foreign governments to file a document under penalty of perjury," but does not say what those difficulties are.  Appellee Br. at 14.  To the contrary, 28 U.S.C. § 1746(1) provides a straightforward process by eliminating the notary requirement for sworn written testimony taken outside the United States.  Plus, DOJ itself contends that it can establish its "foreign regulators" interest without relying on the letters, which undermines its contention that the letters are more probative on the point than any other evidence DOJ can obtain.  *See* Appellee Br. at 15.[3]

---

[2] DOJ's cases applying the residual exception are irrelevant.  They address only the trustworthiness prong, which Appellants do not contest.  *See U.S. v. Slatten*, 865 F.3d 767, 809 (D.C. Cir. 2017) (noting that the government "raises no dispute" to anything but the trustworthiness prong); *U.S. v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (reversing District Court decision that "relied exclusively on its conclusion that the statements … were not trustworthy).

[3] The one paragraph DOJ cites from the UK regulator is double hearsay that cannot conceivably satisfy the residual hearsay exception.  See Appellee Br. at 13 (citing J.A.53 ¶ 20).  That paragraph is premised entirely on what "[w]e [*i.e.*, the UK

- 12 -

DOJ points to three such (purportedly) non-hearsay sources. The first is an unsworn letter from the Federal Reserve submitted to Judge Gleeson. *See* Appellee Br. at 13 (citing J.A.47). This letter is, in fact, hearsay, as the District Court held. *See* J.A.95-96. Indeed, DOJ's excuse for not producing sworn declarations—unexplained difficulties in obtaining them from foreign governments—cannot possibly apply to it. Beyond that, the passage DOJ cites says nothing about disclosing parts of the Monitor Report as opposed to the whole thing and does not explain why foreign regulators would care about the disclosure of U.S.-only information. *See* J.A.47.

The second is a declaration from Benjamin Naftalis, HSBC's outside counsel. *See* Appellee Br. at 13 (citing J.A. 114, 118-119, ¶¶ 3, 24). Mr. Naftalis states that "[d]isclosure of any portion of the Report … would undermine the settled expectations of … foreign regulators." J.A.111. *See also* J.A.118-119. But Mr. Naftalis's self-serving declaration claims no familiarity with DOJ's discussions with foreign regulators regarding the confidentiality assurances DOJ would provide and thus is far too conclusory and lacking in personal knowledge to meet DOJ's burden. It is also inconsistent with the letter from the Malaysian regulator, which makes clear that it was not concerned with information relating only to the United States.

---

Regulator] understand from the Monitor." J.A.53 ¶ 20. Since DOJ in fact obtained an affidavit from the Monitor, it has no conceivable excuse for failing to do so with respect to this proffered testimony.

The third is a declaration from Margaret Moeser of DOJ's Bank Integrity Unit. *See* Appellee Br. at 13 (citing J.A.67-68, ¶¶ 16, 19). But these passages do not discuss the prospect of producing a redacted version of the Monitor Report. So they are irrelevant to the only questions presented in this appeal.

DOJ has not met its burden to show that disclosing U.S.-only information would harm its relationship with foreign regulators. The District Court should have ordered it to produce Judge Gleeson's version: a copy that redacted all foreign jurisdiction appendices and references to foreign countries. *See HSBC I*, 2016 WL 347670 at *6.

### 2.    Encouraging candor can be satisfied through redaction.

DOJ next argues that disclosing even part of the Monitor Report would "impair banking regulators' ability to carry out their responsibilities to supervise banking organizations," by reducing candor between bank personnel and future Monitor reviews. Appellee Br. at 15-16. But it does not respond to Judge Gleeson's solution: redact HSBC employees' names, which would ensure their anonymity due to the "large population" of interviewees—over 300 in the United States Country Review alone. *HSBC I*, 2016 WL 347670 at *5 n.9. It instead makes two boilerplate arguments.

DOJ first cites cases holding that effective bank regulation requires candid communication between banks and their regulators. *See* Appellee Br. at 15-16

(citing *Consumers Union of U. S., Inc. v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978) and *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)).  True.  But these cases do not speak to the question on appeal: whether "disclosure of the particular type of material at issue will, in the specific context of the agency action at issue," reduce candor.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).  They say nothing about redacting the Monitor Report.

As to that question, DOJ cites the Federal Reserve letter submitted to Judge Gleeson.  *See* Appellee Br. at 16 (citing J.A.46).  But not only is that letter inadmissible hearsay, *see* Section II.B.1, *supra*, but it is far too speculative to satisfy DOJ's foreseeable harm burden.  As this Court held in *Reporters Committee*, agencies must show that disclosure "'would'—not 'could'" cause foreseeable harm. *Reps. Comm.*, 3 F.4th at 369.  The Federal Reserve letter does not.  It vaguely says only that "HSBC personnel ***may*** become less forthcoming," and that this possible lack of candor "***could*** affect the quality of" the Monitor's work.  J.A.46 (emphases added).

DOJ also cites Mr. Naftalis's declaration.  *See* Appellee Br. at 16-17 (citing J.A.111 ¶ 3).  But the passage it cites is wholly conclusory and does not even discuss HSBC employees' candor.  It simply says that disclosing parts of the Monitor Report

- 15 -

would "improperly disclose" information that the ***regulators*** expect to remain confidential.  *See* J.A.111.

Again, DOJ fails to meet its burden to show that producing a redacted version of the Monitor Report would harm employees' candor.

### 3.    Securing financial institutions does not require complete withholding.

DOJ argues that disclosing even part of the Monitor Report would expose vulnerabilities in (1) HSBC and/or (2) other financial institutions, which would (3) damage "the integrity of the entire industry."  Appellee Br. at 19.  Its evidence supports none of these contentions.

First, DOJ concedes that parts of the Monitor Report do not identify current HSBC vulnerabilities.  *See* Appellee Br. at 17 (referring to "vulnerabilities that HSBC has now rectified").  It rightly does not argue that disclosing these parts would harm the bank's security.

Second, DOJ argues that disclosing HSBC's past vulnerabilities could harm other financial institutions currently suffering from them.  But DOJ does not argue that every part of the Monitor Report exposes a past or current vulnerability.  Some could, for example, provide background on the monitorship or HSBC's charges, or contain the Monitor's general impressions of HSBC's progress.  DOJ does not argue that these passages would expose a vulnerability and there is no evidence they would.

- 16 -

DOJ also fails to show foreseeable harm from disclosing all HSBC's past vulnerabilities.  For it provides no evidence that, for each past vulnerability noted in the eight-year-old Monitor Report, a current financial institution suffers from it.  Nor is that plausible because, unlike most financial institutions, HSBC's past vulnerabilities constituted serious federal crimes and were thus likely unique to that bank.  *See* J.A.84 (noting that HSBC "admitted responsibility for the charges"). Indeed, DOJ cites only one conclusory and speculative paragraph from Mr. Naftalis, which states only that "the Report's contents **could** provide a roadmap for criminals to exploit vulnerabilities in HSBC's compliance program and **potentially** those of other financial institutions." (emphases added).  J.A.114 ¶ 12.  *See also* Appellee Br. at 17 (citing J.A.114 ¶ 12).

Third, DOJ argues that disclosing even part of the Monitor Report would harm the security of the financial industry more broadly.  But it relies primarily on paragraphs of Ms. Moeser's declaration that do not even speak to the Monitor Report at issue in this case.  These passages are instead under a general heading, "MONITORSHIPS," that describes how monitorships typically work.  *See* Appellee Br. at 20 (citing J.A.64-65, ¶¶ 9-11).  In that context, Ms. Moeser says that disclosure "could undermine the [financial institution's] security and that of the financial system."  J.A.64 ¶ 9.  But Ms. Moeser does not say how, "in the specific context of

the agency action at issue," no redactions to the Monitor Report would suffice to allay that concern.  *Reps. Comm.*, 3 F.4th at 370.

### 4.    Partial disclosure is not "trivial."

Finally, DOJ argues for the first time on appeal that certain parts of the Monitor Report are too "trivial" to release, including the report's table of contents. *See* Appellee Br. at 22.  This argument both is wrong and casts doubt on DOJ's segregability analysis in a way that would not have been apparent to the District Court.

DOJ argues that it is not required to produce the table of contents and other unspecified "trivial portions of the report" because they supposedly would "have minimal or no information content."   Appellee Br. at 22 (quoting *Perioperative Servs. & Logistics, LLC v. Dep't of Veterans Affs.*, 57 F.4th 1061, 1069 (D.C. Cir. 2023) (further quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977))).  But these cases do not allow agencies to withhold parts of records they deem "trivial."  That would be a gift-wrapped invitation for agencies to misuse the segregability process and deem "trivial" any information that would embarrass them, contrary to FOIA's basic purpose of "hold[ing] the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  *Mead* held as much: "This does not mean that a court should approve

- 18 -

an agency withholding because of the court's low estimate of the value to the requestor of the information withheld." *Mead*, 566 F.2d at 261 n.55.

Instead, these cases at most allow agencies to decline to segregate information that, as a matter of linguistics, essentially lacks semantic content. *Mead* held only that that a court "might" accept an agency's decision not to segregate a record if "the result would be an essentially meaningless set of words and phrases." *Mead*, 566 F.2d at 261. And *Perioperative* held only that an agency need not segregate and produce "every [non-exempt] word and punctuation mark." *Perioperative Servs.*, 57 F.4th at 1069. DOJ has not argued that the table of contents and the other unspecified "trivial" parts of the report lack semantic content.

In addition, disclosing the Monitor Report's background and table of contents would contribute substantially to the public interest. DOJ charged HSBC with several serious crimes and immediately decided not to prosecute the bank—one of the world's largest—on the heels of the 2008 financial crisis. As Judge Gleeson noted, this decision led to "heavy public criticism of the DPA [deferred prosecution agreement]," to the point where he "received unsolicited input from members of the public urging [him] to reject the DPA." *U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, 2013 WL 3306161, at *7 (E.D.N.Y. July 1, 2013). Yet as far as Appellants are aware, the public has almost no information about the success (or lack thereof) of HSBC's diversion from the ordinary criminal process, or even how that was

- 19 -

assessed.  The background and table of contents would shed valuable light on these issues, including by illuminating the origins of the deferred prosecution agreement and broadly how the Monitor assessed HSBC's compliance with it.  Indeed, Judge Gleeson observed that the background section, which would contain much of this information, is one of the least sensitive in the whole report: "The Monitor's Report is comprehensive, and long sections summarize the Monitor's findings and the processes that the Monitor took to reach those findings.  These sections contain information that the public has a right to see and few specific facts that will need to be redacted."  *HSBC I*, 2016 WL 347670 at *6 n.11.

Finally, DOJ's new position on segregability confirms the need for *in camera* review by the District Court.  DOJ never told the District Court that it considered parts of the report non-segregable because they were too "trivial" to be released.  Thus, the District Court never considered that question.  Had it done so, it may well have (and should have) decided to review those passages *in camera*, particularly in light of Judge Gleeson's holding that disclosing the harmless parts of the report "will not render the Report either useless or incomprehensible."  *HSBC I*, 2016 WL 347670 at *6.  The Court should grant the District Court that opportunity in the first instance.

***

DOJ has introduced no evidence to support its claim that disclosing any part of the Monitor Report would cause foreseeable harm. The Court should reverse, order partial summary judgment for Appellants with respect to Exemption 8 foreseeable harm, and remand with instructions that the District Court review the report *in camera* and order DOJ to produce a *Vaughn* index.

### C.     Appellants' contrary evidence warrants reversal.

Even if DOJ introduced sufficient evidence to meet its burden, however, this Court should still reverse the District Court's grant of summary judgment to DOJ. Appellants' evidence at least creates a dispute of fact as to whether disclosing parts of the Monitor Report would cause foreseeable harm, which the District Court should resolve through *in camera* review after Appellants have had an opportunity to respond to a *Vaughn* index. *See* Appellant Br. at 32-45. DOJ's contrary arguments hold no water.

DOJ argues, without citation to Judge Gleeson's decision, that Judge Gleeson "did not conclude that no harm could reasonably be foreseen to arise if portions of the Monitor Report were released." Appellee Br. at 24. That is incorrect. His opinion speaks for itself:

- As to assurance with foreign regulators, Judge Gleeson found as a fact that redacting the non-U.S. country appendices and "country names and explicit references to confidential material, as identified by these foreign jurisdictions … will ensure that confidential materials are restricted to the FCA, DOJ and FRB and HSBC." *HSBC I*, 2016 WL 347670 at *6 (cleaned up).

- 21 -

- As to HSBC employees' candor, Judge Gleeson found as a fact that "the non-identifying information that these employees have provided may be made public without implicating any of the government's and HSBC's raised concerns." *Id.* at *5.

- As to security of financial institutions, Judge Gleeson found as a fact that "much of the information is generalized or would likely be otherwise unhelpful to a would-be money launderer." *Id.* at *6.

- As to all DOJ's cited interests, Judge Gleeson "disagree[d] with the government and HSBC that the interests the parties have raised cannot be addressed through targeted redactions." *Id.*

DOJ also argues that Judge Gleeson's factual findings are irrelevant because he applied the First Amendment's "presumption in favor of disclosure of judicial records" rather than FOIA. Appellee Br. at 24. But as Appellants have shown, in the context of this case, there is no meaningful difference between that presumption and FOIA's presumption in favor of disclosure. Appellant Br. at 34-39.

DOJ responds that there is no "presumption in favor of disclosure of records that are subject to a FOIA exemption." Appellee Br. at 24. That, too, is wrong. After the FOIA Improvement Act, FOIA now presumes that records falling under an exemption's text are ***open*** unless the agency can show foreseeable harm, which this Court has described as an "independent and meaningful burden on agencies." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). Confirming this reading, both the Senate and House reports unequivocally describe the foreseeable harm requirement as executing a "presumption of openness." *See* S. Rep. No. 114-4, at 3, 7 (2016) (noting that the requirement that "an agency may

- 22 -

withhold information only if it reasonably foresees a specific identifiable harm to an interest protected by an exemption" is "commonly referred to as the 'presumption of openness'"); *id.* at 7 (noting that the FOIA Improvement Act "codifies" the presumption of openness); H.R. Rep. No. 114-391, at 9 (2016) (noting that House's companion bill "would codify the presumption of openness," which it construed as "prohibit[ing] agencies from withholding information unless the agency 'reasonably foresees that disclosure would cause a specific, identifiable harm to an interest protected by an exemption'"). DOJ offers no sound reason to discount Judge Gleeson's factual findings.

DOJ also tries to undermine Appellants' reliance on the Monitor's opinion that, notwithstanding the interests DOJ identifies (acknowledged at ¶¶ 10-12 of his affidavit, *see* J.A.44), "a redacted report that does not negatively impact the Monitor's work can be produced." J.A.44. It points out that the Monitor did not support disclosing a redacted version because it "might lack the factual support that gives it critical context and meaning," Appellee Br. at 23-24 (quoting J.A.44), and argues that such a redacted version would "have minimal or no information content," *id.* at 24 (quoting *Perioperative*, 57 F.4th at 1069).

But there is a dispute of fact as to whether a redacted version of the Monitor Report would lack too much detail to be informative: Judge Gleeson held that his proposed redactions "will not render the Report either useless or incomprehensible."

*HSBC I*, 2016 WL 347670, at *6.  Plus, DOJ's argument depends on its flawed over-reading of *Perioperative* and *Mead*.  *See* Section II.B.4, *supra*.  No provision of FOIA allows an agency to withhold a record simply because the non-exempt parts would not seem fully supported.  Instead, the statute is clear that agencies may only withhold exempt material: "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).

Even if DOJ introduced sufficient evidence to convince a rational factfinder, Appellants did too.  The District Court erred by granting DOJ summary judgment.  This Court should order it to resolve any factual disputes via *in camera* review after affording Appellants the opportunity to respond to a detailed *Vaughn* index.

### D.    The District Court should have reviewed the Monitor Report *in camera*.

DOJ does not respond to any of the reasons unique to this case why the District Court should not have granted summary judgment to the agency without first reviewing the Monitor Report *in camera*—most importantly, the factual findings of a co-equal Article III judge, issued after an extensive *in camera* review, and after considering the same evidence and arguments DOJ presented here, that directly contradict DOJ's position.  *See* Appellant Br. at 45-47.  It instead raises three generic concerns.

- 24 -

First, DOJ argues that, in general, *in camera* review is burdensome and conducted without the benefit of an adversary proceeding. *See* Appellee Br. at 27. But those burdens are likely slight because the District Court can work from Judge Gleeson's review, which adopted DOJ's specific suggestions for redactions. *See U.S. v. HSBC Bank USA, N.A.*, No. 12-CR-763, (E.D.N.Y. Mar. 9, 2016), ECF No. 70, at 2 ("I have made all of the redactions requested by the government."). Further lessening any burden, Appellant does not contest the withholding of five of the report's six appendices (the exception being the United States Country Report). Plus, unlike other cases, this review would be informed by substantial adversary testing in the form of eight summary judgment briefs, six declarations, numerous exhibits, and whatever else the parties file on remand.

Second, DOJ argues that *in camera* review could cause the Monitor Report to be leaked. *See* Appellee Br. at 27. But the agency has not identified a single instance of a leaked document submitted for *in camera* review in a FOIA case. Government officials, including Court staff, are presumed to follow their official duties, including not leaking documents without authority. *See NARA v. Favish*, 541 U.S. 157, 174 (2004). DOJ gives no reason not to trust them to follow their duties here. Indeed, the agency was comfortable enough in this case to submit an *in camera*, *ex parte* declaration to support its Exemption 7(A) withholdings that discussed "an ongoing criminal prosecution." Memorandum of Points and Authorities in Support of

- 25 -

Defendant's Renewed Motion for Summary Judgment at 5, *Leopold v. DOJ*, No. 19-cv-03192, (D.D.C. Sept. 13, 2021), ECF No. 34-2.

Third, DOJ argues that *in camera* review was unnecessary because DOJ met its burden. *See* Appellee Br. at 28. That argument fails for reasons discussed above and in Appellants' opening brief.

*In camera* review was appropriate and necessary in the unique circumstances of this case.

## IV.    CONCLUSION

This Court should reverse. It should order that the District Court enter summary judgment for Appellants on Exemption 8 foreseeable harm. And it should remand for the District Court to consider, after *in camera* review and a *Vaughn* index, which passages of the Monitor Report DOJ may lawfully withhold under that and DOJ's other asserted exemptions.

Dated: September 5, 2023                Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew V. Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone: (312) 243-5900
Facsimile: (312) 243-5902
Email: matt@loevy.com
match@loevy.com
FOIA@loevy.com
*Counsel for Plaintiff-Appellants*

- 26 -

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)

I certify that the foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,195 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit R. 32(e)(1).

I certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: September 5, 2023          */s/ Stephen Stich Match*
                                 Stephen Stich Match
                                 *Counsel for Plaintiff-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, I caused copies of the foregoing Appellants' Opening Brief to be served on all counsel of record via the Court's ECF filing system.

Dated: September 5, 2023          */s/ Stephen Stich Match*
                                 Stephen Stich Match
                                 *Counsel for Plaintiff-Appellants*