UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-5300
(C.A. No. 19-3192)

JASON LEOPOLD, *et al.*,                                             Appellants,

v.

U.S. DEPARTMENT OF JUSTICE,                              Appellee.

**APPELLEE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY AFFIRMANCE**

As demonstrated in the Department of Justice's motion, summary disposition is appropriate in this appeal. Nothing in Appellants' Opposition compels a contrary result.

**I.      Exemption 8 Applies to the Monitor Report in Its Entirety.**

Appellants' Opposition to summary affirmance does not contest that the Monitor Report is "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions," 5 U.S.C. § 552(b)(8), and have, accordingly waived any challenge to whether the Monitor Report is within the purview of Exemption 8. *See, e.g.*, *Harris v. Bodman*, No. 08-5091, 2008 WL 5532102, at *1 (D.C. Cir. Aug. 27, 2008) (arguments not addressed in opposition to motion for summary affirmance waived); *Sinito v. Dep't of Just.*, No. 01-5168, 2001

WL 1488632, at *1 (D.C. Cir. Oct. 15, 2001) (same); *see also* Mot. for Summ. Affirmance at 7–11. Likewise, by failing to respond to the arguments raised in the motion for summary affirmance, Appellants have waived any challenge to the District Court's segregability finding by failing to dispute whether portions of the Monitor Report are not covered by Exemption 8. *See* Mot. for Summ. Affirmance at 16–19. Thus, Appellants' entire challenge on appeal, as in the District Court, regards whether the Department of Justice sufficiently demonstrated foreseeable harm from release of the Monitor Report to interests protected by Exemption 8.

## II. Release of the Monitor Report Would Harm the Federal Reserve's Ability to Regulate and Enforce Sanctions in International Financial Transactions.

Since Congress adopted the foreseeable harm requirement in 2016, this Court has thoroughly explained the standard. *See, e.g.*, *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–72 (D.C. Cir. 2021); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370–71 (D.C. Cir. 2020). With the sole exception of Exemption 3, the foreseeable harm requirement does not distinguish between the different FOIA exemptions. *See* 5 U.S.C. § 552(a)(8)(B) ("Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)."). Thus, for all other exemptions, "the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm

2

an interest protected by' the FOIA exemption." *Reps. Comm.*, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Id.* at 369 (alteration in original) (quoting H.R. Rep. No. 391, at 9).

The Court has had ample opportunity to describe the interests protected by Exemption 8. *See, e.g.*, *Pub., Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 5 (D.C. Cir. 2014); *Pub. Citizen v. Farm Cred. Admin.*, 938 F.2d 290, 293 (D.C. Cir. 1991) (per curiam); *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980); *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 534 (D.C. Cir. 1978). In particular, "the primary reason for adoption of exemption 8 was to ensure the security of financial institutions," and a "secondary purpose in enacting exemption 8" was "to safeguard the relationship between the banks and their supervising agencies." *Consumers Union*, 589 F.2d at 534; *accord Pub. Citizen*, 938 F.2d at 293; *see also Pub. Invs.*, 771 F.3d at 5 ("Congress enacted Exemption 8 to address the 'concern[ ] that release of bank examination and operating reports could endanger the fiscal well-being of [ ] subject banks.'") (alterations in original) (quoting *Consumers Union*, 589 F.2d at 537). Accordingly, under Exemption 8, "the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would

3

harm an interest protected by' the FOIA exemption," *Reps. Comm.*, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)—namely, "ensur[ing] the security of financial institutions" or "safeguard[ing] the relationship between the banks and their supervising agencies," *Consumers Union*, 589 F.2d at 534.

In this case, the Department of Justice provided detailed descriptions of why it reasonably foresees that disclosure of any part of the Monitor Report would cause significant harm and risk compromising the security of financial institutions. *See Reps. Comm.*, 3 F.4th at 369. As described in the declarations summarized in the motion for summary affirmance, the Department of Justice "articulate[d] both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Id.* (quotation marks omitted).

Appellants primarily rely on a district court opinion that the U.S. Court of Appeals for the Second Circuit reversed. Aplts.' Opp'n to Mot. for Summ. Affirmance ("Aplts.' Opp'n") at 2–6 (citing *United States v. HSBC Bank USA, N.A.*, Crim. A. No. 12-0763, 2016 WL 347670 (E.D.N.Y. Jan. 28, 2016), *rev'd*, 863 F.3d 125 (2d Cir. 2017)). While that opinion found that portions of the Monitor Report could be released with redactions, the Second Circuit reversed and explicitly "offer[ed] no view on whether any of FOIA's exemptions would apply" to the

4

Monitor Report.[1] *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 142 n.7 (2d Cir. 2017). It is the Second Circuit's opinion, not the reversed district court opinion, that remains the law in that case, and that opinion offered no view on the issue here. *See Am. Fed'n of Gov't Emps., Local 2052 v. Reno*, 992 F.2d 331, 336 (D.C. Cir. 1993) (noting that a decision "was subsequently reversed by the Federal Circuit, and therefore is no longer valid precedent") (citation omitted). Moreover, decisions of other district courts, even if not reversed, do not bind a district court and do not bind this Court. *See Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 149 (D.C. Cir. 2022) ("Built into our federal judicial system is the notion that binding precedent 'for the district courts within a circuit' is set 'only by the court of appeals for that circuit.'") (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987)). Accordingly, neither the district court's opinion nor its reversal resolved the questions posed in this case. *HSBC*, 863 F.3d at 129.

In this case, the Department of Justice's sworn declarations demonstrate the harm that would ensue from disclosure of the Monitor Report. First, disclosure of the Monitor Report threatens the security of HSBC and other financial institutions as they attempt to thwart crime. R.15-10 ¶ 19; R.34-4 ¶¶ 2–3, 12. The Monitor

---

[1] The district court did not release a redacted version of the Monitor Report on the public docket and instead the entire Monitor Report remained under seal while the matter was pending appellate review. *United States v. HSBC Bank USA, N.C.*, Crim. A. No. 12-0763 (E.D.N.Y. Mar. 9, 2016), ECF No. 70.

Report "provide[s] a roadmap for criminals to exploit vulnerabilities in HSBC's compliance program." R.34-4 ¶ 3. "The entire purpose of the [Monitor] Report was to comprehensively assess and make recommendations for improving HSBC's [anti-money laundering] and sanctions compliance program." *Id.* ¶ 13. Revealing those vulnerabilities will identify ways for criminals seeking to launder funds or circumvent Office of Foreign Assets Control sanctions programs to do so more effectively. *Id.* ¶ 12. Even for those vulnerabilities that HSBC has now rectified, criminals could take what they learn from the Monitor Report and use that knowledge against other financial institutions that suffer from the same vulnerabilities. *Id.*

In response, Appellants urges that the Department of Justice's argument was "supported only by an unsworn letter." Aplts.' Opp'n at 17. That is incorrect: this argument is supported by the sworn Declarations of Margaret A. Moeser (R.15-10) and Benjamin Naftalis (R.34-4). Appellants object on hearsay grounds to a "see also" citation in the motion for summary affirmance, Mot. for Summ. Affirmance at 13 (citing R.15-8 at 27), but the Naftalis Declaration fully supports withholding the Monitor Report because release risks "provid[ing] a roadmap for criminal to exploit vulnerabilities in HSBC's compliance program and potentially those of other financial institutions," R.34-4 ¶ 12. In demonstrating foreseeable harm, the Department of Justice need not identify specific financial institutions that may have

6

these vulnerabilities, which would serve only to add flashing lights to the roadmap for criminals.

Second, disclosure would harm future prosecutions of other financial institutions. R.15-10 ¶ 19; R.34-4 ¶¶ 10, 24. "The processes that make monitorships of [financial institutions] pursuant to criminal [deferred prosecution agreements] successful, and in fact, the very existence of such monitorships, could be threatened if [financial institutions] and their regulators in the United States and abroad believe that monitors' reports might be publicly disclosed." R.15-10 ¶ 19. Such prosecutions require significant coordination between the financial institution at hand, U.S.-based regulators, and foreign regulators. The "voiding of promises of confidentiality made to several foreign regulators" would cause "significant" harm to the ability of these global regulators to continue to work together safeguarding financial institutions. R.34-4 ¶ 3; *see also id.* ¶ 24 ("Public release of even a redacted version of the [Monitor] Report would violate these assurances of confidentiality and result in substantial negative ramifications for US law enforcement.").

Again, Appellants assert that this argument is "based primarily on unsworn, inadmissible letters," Aplts.' Opp'n at 19, but as the paragraph above reflects, the Government's argument is fully supported by the sworn Declarations of Margaret A. Moeser (R.15-10) and Benjamin Naftalis (R.34-4). While a reversed opinion of a district court disagreed that "[p]ublic release of even a redacted version of the

7

[Monitor] Report would violate these assurances of confidentiality and result in substantial negative ramifications for US law enforcement," R.34-4 ¶ 24; *see also HSBC*, 2016 WL 347670, that reversed opinion did not bind the district court below, which was free to consider the evidence in this case to reach its decision. *See Cannon*, 45 F.4th at 147.

Third, disclosure would seriously impair the Federal Reserve's ability to carry out its supervisory responsibilities over banking organizations. R.15-10 ¶ 20; R.34-4 ¶ 24. As explained in the sworn Declaration of Margaret Moeser, "public disclosure of the [Monitor's] Report would likely cause foreign [financial institution] regulators to be reluctant or unwilling to authorize [the Monitor] to investigate, conduct interviews and obtain access to supervisory information at [HSBC's] affiliated institutions in their respective jurisdictions." R.15-10 ¶ 20. "[W]hen U.S. and foreign regulators consider allowing their constituent [financial institutions] to share information with future monitors, they may refuse if they believe that the information will be made public." *Id.*; *see also* R.34-4 ¶ 24. "This would eliminate one of the most effective tools that [the Department of Justice] uses to identify and address [anti-money laundering] and sanctions risk within [financial institutions]." R.15-10 ¶ 21.

Lastly, Appellants' Opposition urges that the prior disclosure of certain details pertaining to the Monitor Report demonstrates that the sky has not fallen yet and

8

that, therefore, some portions of the Monitor Report could be disclosed without harm. Aplts.' Opp'n at 20. To be clear, Appellants do not raise a public-domain argument, but rather attempt to use this speculation to rebut the Department of Justice's foreseeable harm analysis. Appellants offer nothing but speculation to suggest that no harm has resulted from prior disclosure of details regarding the Monitor Report. And even if an omniscient being could identify select portions of the Monitor Report that could be disclosed without causing future harm, *contra* R.34-4 ¶ 24 ("Public release of even a redacted version of the [Monitor] Report would violate these assurances of confidentiality and result in substantial negative ramifications for US law enforcement."), information that may seem harmless by itself may be pieced together by criminals to violate the law. *See Ctr. for Nat'l Sec. Studs. v. Dep't of Just.*, 331 F.3d 918, 928 (D.C. Cir. 2003); *see also id.* ("Thus, '[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context.'") (quoting *CIA v. Sims*, 471 U.S. 159, 178 (1985)).

Further, this Court has not required proof of the foreseeable harm occurring to uphold the lawfulness of agency withholdings, as long as the foreseeable harm is sufficiently described and reasonable. *See Machado Amadis*, 971 F.3d at 371. Accepting Appellants' speculation as enough to rebut the showing in this case would

9

be inconsistent with this Court's precedents governing both FOIA and summary judgment. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

This is precisely why, in formulating Exemption 8, "Congress looked to the nature and source of the material and determined to provide absolute protection regardless of the circumstances underlying the regulatory agency's receipt or preparation of examination, operating or condition reports." *Gregory*, 631 F.2d at 898. As a result of this "absolute protection," *id.*, this Court has affirmed the withholding in full of reports protected by Exemption 8 every time. *See, e.g.*, *Pub. Invs.*, 771 F.3d at 3, 8; *Pub. Citizen*, 938 F.2d at 293–94; *Gregory*, 631 F.2d at 899 n.6; *Consumers Union*, 589 F.2d at 535. The Court should once again summarily affirm the withholding in full of a report protected by Exemption 8. *See Pub. Citizen*, 938 F.2d at 291.

## CONCLUSION

For the foregoing reasons, Appellants' Opposition fails to show any reason why more extensive submissions or oral argument would aid the Court, and the Court should summarily affirm the judgment below.

        MATTHEW M. GRAVES
        United States Attorney

        R. CRAIG LAWRENCE
        Assistant United States Attorney

        */s/ Douglas C. Dreier*
        DOUGLAS C. DREIER
        Assistant United States Attorney
        Civil Division
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-2551
        douglas.dreier@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) and contains 2,258 words, as calculated by counsel's word processor.

>  */s/ Douglas C. Dreier*
> DOUGLAS C. DREIER
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February, 2023, I have caused the foregoing Reply to be served on Appellants' counsel by filing the Certificate on the Court's CM/ECF system. Counsel are registered users.

> */s/ Douglas C. Dreier*
> DOUGLAS C. DREIER
> Assistant United States Attorney